UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENEVIEVE BASHAM, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>TAILORED LIVING CHOICES, LLC,<br><br>    Defendant. | Case No. 23-cv-02678-DMR<br><br>**ORDER ON MOTION FOR CONDITIONAL CERTIFICATION OF A COLLECTIVE ACTION**<br><br>Re: Dkt. No. 20 |

Plaintiffs Genevieve Basham, Jennifer Raper, and George Pepper, on behalf of themselves and all others similarly situated, bring this wage and hour action against their current and former employer, Tailored Living Choices, LLC. Plaintiffs move for conditional certification of a collective action under the Fair Labor Standards Act ("FLSA"). [Docket Nos. 20, 34.] The court held a hearing on February 8, 2024. For the following reasons, the motion is granted in part.[1]

**I.     BACKGROUND**

    **A.     Allegations in the Third Amended Complaint**

Defendant is a California company that "provides customized care and services for individuals with developmental and mental health disabilities." [Docket No. 25 (Third Amended Complaint, "TAC") ¶¶ 16, 17.] Plaintiffs Raper and Pepper work for Defendant as Instructional Assistants ("IA"). Plaintiff Basham worked for Defendant as an IA until June 2022. *Id*. at ¶¶ 9, 11, 13. The primary duties of IAs "include helping clients get dressed and undressed, as well as tending to clients' bathing, toileting, and oral hygiene, helping clients eat by cutting food into bite-sized pieces and monitoring their meals to mitigate choking risks." *Id*. at ¶ 44.

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). [Docket Nos. 7, 8, 26.]

Plaintiffs allege claims under the FLSA and state law, as set forth below.[2] With respect to the FLSA claims, Plaintiffs allege that Defendant failed to properly compensate Plaintiffs and other similarly situated employees for all hours worked and failed to pay proper overtime wages. *See id.* at ¶ 44. Specifically, Plaintiffs Raper, Pepper, and other similarly situated employees "were not compensated for all hours worked while driving to different clients' houses within the same workday" because they were required to "clock out, drive to another client's house and clock back in." Defendant also did not count travel time towards the total hours worked for purposes of calculating and paying overtime. *Id.* at ¶¶ 49, 55, 179, 185.

Plaintiffs allege that Defendant also had a practice, procedure, and/or policy under which it reduced Plaintiffs and other similarly situated employees' pay for sleep time hours, resulting in inadequate minimum wages. Specifically, Defendant reduced Plaintiffs and other similarly situated employees' hourly pay by at least $1.00 for eight hours of sleep time for shifts longer than 24 hours "without a valid agreement." *Id.* at ¶¶ 50, 51. Even if there was a valid agreement, Defendants did not provide adequate sleeping facilities and Plaintiffs and other similarly situated employees were forced to sleep on couches. *Id.* at ¶ 52. Additionally, Plaintiffs were interrupted during the night once a week to assist their clients' needs. *Id.* at ¶ 53. Defendant also maintained a practice of failing to count overnight hours and IHSS hours[3] towards Plaintiffs and other similarly situated employees' total hours worked for the purpose of calculating and paying overtime. As a result, Plaintiffs and other similarly situated employees did not receive all overtime wages despite working more than 40 hours in a workweek. *Id.* at ¶¶ 54, 57, 179, 185.[4]

---

[2] Plaintiffs' motion for class certification must be filed by July 1, 2024. [*See* Docket No. 14.]

[3] Plaintiffs reference "IHSS hours" in their motion and the TAC but do not define the term or otherwise explain it. In its opposition, Defendant explains that it hires IAs to provide Supported Living Services ("SLS") to adults with developmental and mental health disabilities in their private homes. Opp'n 1-2 (citing Chakrabarti Decl. Nov. 17, 2024, ¶ 2). IAs provide both SLS and In Home Supportive Services ("IHSS") to clients. IAs who perform IHSS work are paid directly by "the local county public authority," with Defendant "paying overtime premiums if the IHHS work results in overtime under the FLSA when considering the combination of SLS and IHSS hours." According to Defendant, the county pays overtime premiums to IAs when their IHSS hours alone are greater than 40 in one workweek. *See* Chakrabarty Decl. ¶¶ 3, 4.

[4] Plaintiffs further allege that Defendants violated state law by failing to indemnify Plaintiffs and other similarly situated employees for all necessary expenditures or losses, including failing to

2

**B.      Procedural History**

Plaintiffs Basham and Raper filed this action in state court in December 2021. [Docket No. 1 (Notice of Removal, "NOR") ¶ 1.] After Plaintiffs filed an amended complaint, Defendant removed the case to this court in May 2023. *Id.* at ¶ 3. Plaintiffs filed a second amended complaint by stipulation in September 2023 and subsequently filed the instant motion for conditional certification of a collective action. They filed the TAC, which is the operative complaint, by stipulation in November 2023. The TAC alleges the following claims: 1) failure to pay minimum and regular wages in violation of California Labor Code sections 1194, 1197, and 1198; 2) failure to indemnify all necessary expenditures in violation of California Labor Code section 2802; 3) failure to maintain accurate records in violation of California Labor Code sections 1174 and 1174.5; 4) failure to provide accurate itemized wage statements in violation of California Labor Code sections 226 and 1198; 5) failure to timely pay all wages due upon separation of employment in violation of California Labor Code sections 201, 202, and 203; 6) violation of California Business and Professions Code section 17200 et seq.; 7) violation of the Private Attorneys General Act of 2004, California Labor Code section 2698 et seq.; 8) failure to pay minimum wages in violation of the FLSA, 29 U.S.C. §§ 201 et seq.; 9) failure to pay overtime compensation in violation of the FLSA, 29 U.S.C. §§ 207, 211 and 216(b).

Plaintiffs bring the FLSA claims (claims nine and ten) on behalf of the following proposed collective:

> All current and former non-exempt employees who worked for Defendants in the State of California in the position of Instructional Assistant at any time from June 29, 2017 through the present.

TAC ¶ 94. They also seek to represent the following subclass collectives:

> **The Minimum Wage Subclass**
> All members of the FLSA Collective who were not paid at least minimum wage for all hours worked or time spent under the control of Defendants, individually and/or collectively, at any time from June

---

reimburse costs for the use of personal cell phone and personal cars to transport patients and travel between work locations. TAC ¶ 58, 59. As a result of these practices, Plaintiffs allege that Defendants did not keep accurate records of the actual hours that Plaintiffs and other similarly situated employees worked and their wages earned and failed to provide them with accurate itemized wage statements that included the correct total hours worked. *Id.* at ¶¶ 60, 61.

3

29, 2017, to the present.

**The Overtime Subclass**
All members of the FLSA Collective who were not paid overtime pay at a rate of not less than one and one-half times their regular rates of pay after forty hours in a workweek at any time from June 29, 2017, to the present.

*Id*. at ¶ 95. Plaintiffs now move for conditional certification of the collective. Plaintiffs Basham, Raper, and Pepper filed consents to sue under the FLSA with their reply.[5] *See* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). [Docket No. 27-1 (Gee Decl. Dec. 1, 2023) ¶¶ 6-8, Exs. 1-3.]

## II. LEGAL STANDARD

The FLSA provides that employees may bring a collective action on behalf of themselves and other "similarly situated" employees. 29 U.S.C. § 216(b). "In contrast to class actions pursuant to Rule 23 of the Federal Rules of Civil Procedure, potential participants in a collective action under the FLSA must 'opt in' to the suit by filing a written consent with the court in order to benefit from and be bound by a judgment." *Saleh v. Valbin Corp.*, 297 F. Supp. 3d 1025, 1028 (N.D. Cal. 2017) (citations omitted). "Employees who do not opt in are not bound by a judgment and may subsequently bring their own action." *Id*. "Because class members must opt-in, the standards for certifying a conditional FLSA class are considerably less stringent than those for Rule 23 classes." *Brewer v. Gen. Nutrition Corp.*, No. 11-CV-03587 YGR, 2013 WL 100195, at *2 (N.D. Cal. Jan. 7, 2013) ("*Brewer I*"). Unlike a Rule 23 class action, "the district court in a collective action plays no . . . gatekeeping role." *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1101 (9th Cir. 2018).

"Determining whether a collective action is appropriate is within the discretion of the district court." *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 466 (N.D. Cal. 2004). "[A]n FLSA-specific, fact-intensive inquiry into whether plaintiffs are 'similarly situated' governs." *Brewer v. Gen. Nutrition Corp.*, No. 11-CV-3587 YGR, 2014 WL 5877695, at *14 (N.D. Cal.

---

[5] Defendant's request that the court deny Plaintiffs' motion on the ground that they have not filed consents to sue under the FLSA is denied as moot. *See* Opp'n 7-8.

Nov. 12, 2014) (citations omitted).  The FLSA does not define the term "similarly situated" and the Ninth Circuit has not defined the term.  *See Campbell*, 903 F.3d at 1108.  To assess whether plaintiffs are "similarly situated," courts apply a "two-step approach involving initial notice to prospective plaintiffs, followed by a final evaluation whether such plaintiffs are similarly situated." *Leuthold*, 224 F.R.D. at 467 (noting that the two-step approach is preferred); *Saleh*, 297 F. Supp. 3d at 1028-29 (collecting cases); *Campbell*, 903 F.3d at 1108-09 (describing "loose consensus" regarding two stages).  At the first step, the court "makes an initial 'notice stage' determination of whether potential opt-in plaintiffs exist who are similarly situated to the representative plaintiffs, and thus whether a collective action should be certified for the purpose of sending notice of the action to potential collective action participants." *Saleh*, 297 F. Supp. 3d at 1029.  "The sole consequence of a successful motion for preliminary certification is the sending of court-approved written notice to workers who may wish to join the litigation as individuals." *Campbell*, 903 F.3d at 1101 (citation and quotation marks omitted).

"In the second step, the party opposing certification may move to decertify the class once discovery is complete and the case is ready to be tried." *Adams*, 242 F.R.D. at 536.  At this later stage, the court "makes a factual determination about whether the opt-in plaintiffs are actually similarly situated, by weighing such factors as: (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendants with respect to the individual plaintiffs; and (3) fairness and procedural considerations." *Saleh*, 297 F. Supp. 3d at 1030 (quotation marks and citation omitted).

Plaintiffs bear the burden of showing that the plaintiffs are "similarly situated" for purposes of § 216(b). *Leuthold*, 224 F.R.D. at 466.

### III.   DISCUSSION

#### A.  Conditional Certification

The Ninth Circuit has explained that "[a]t this early stage of the litigation, the district court's analysis is typically focused on a review of the pleadings but may sometimes be supplemented by declarations or limited other evidence." *Campbell*, 903 F.3d at 1109 (citations omitted).  "The level of consideration is 'lenient'—sometimes articulated as requiring substantial

5

allegations, sometimes as turning on a 'reasonable basis,' but in any event loosely akin to a plausibility standard, commensurate with the stage of the proceedings." *Id.* (cleaned up; citing *Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 243 (3d Cir. 2013); *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 953 (11th Cir. 2007)).

Here, Plaintiffs seek conditional certification of the following FLSA collective:

> All current and former non-exempt employees who worked for Defendants in the State of California in the position of Instructional Assistant at any time from June 29, 2017 through the present.

Mot. 1. They also seek conditional certification of two subclass collectives:

> **The Minimum Wage Subclass**
> All members of the FLSA Collective who were not paid at least minimum wage for all hours worked or time spent under the control of Defendants, individually and/or collectively, at any time from June 29, 2017, to the present.
>
> **The Overtime Subclass**
> All members of the FLSA Collective who were not paid overtime pay at a rate of not less than one and one-half times their regular rates of pay after forty hours in a workweek at any time from June 29, 2017, to the present.

Plaintiffs allege the existence of at least four common policies and practices that resulted in FLSA violations and unpaid minimum or overtime wages:

1. Defendant's policy and practice of failing to include all hours worked during overnight shifts and/or failing to include sleep time and IHSS hours into the calculation of hours worked for overtime purposes;

2. Defendant's policy and practice of paying some of the hours worked in excess of 40 per week at straight time instead of the applicable overtime rate;

3. Defendant's policy and practice of deducting at least $1 from IAs' regular rate of pay for hours worked during the overnight shifts, which resulted in the miscalculation of the applicable overtime rate; and

4. Defendant's policy and practice of requiring IAs to clock out when traveling between clients' homes and/or failing to pay IAs for the time spent traveling between work locations.

Mot. 2. In support of their allegations about these policies and practices, Plaintiffs submitted

1  declarations from Plaintiffs Basham and Raper, as well as current and former employees Tyler
2  Lumpkin, Alicia Holmes, Yolanda Murphy, and Raimesha Barnes.  [Docket Nos. 20-15 (Basham
3  Decl. Oct. 19, 2023); 20-19 (Raper Decl. Oct. 19, 2023); 20-3 at ECF pp. 2-17 (Lumpkin Decl.
4  Oct. 9, 2023, Holmes Decl. Oct. 11, 2023, Barnes Decl. Oct. 19, 2023); 27-5 (Murphy Decl. Nov.
5  21, 2023).][6]

6  The declarants describe similar job duties in the IA position, including transporting clients
7  to and from doctors' appointments, distributing medication, cooking, cleaning, dressing, and
8  feeding clients.  Murphy Decl. ¶ 4; Barnes Decl. ¶ 4; Basham Decl. ¶ 5; Raper Decl. ¶ 5.  They
9  describe being interrupted during overnight hours because they were required to assist with their
10 clients' needs at any time, even if it was during their "sleep time."  Basha Decl. ¶ 27; Raper Decl.
11 ¶ 22; Holmes Decl. ¶ 7; Barnes Decl. ¶ 14.  They also do not recall signing agreements permitting
12 Defendant to reduce their rates of pay for overnight shifts.  Basham Decl. ¶ 18; Raper Decl. ¶ 18;
13 Murphy Decl. ¶ 8.  Several declarants describe receiving a reduced hourly rate for overnight shifts
14 and not having overnight hours counted towards their weekly totals for purposes of overtime.
15 Basham Decl. ¶¶ 20-25; Raper Decl. ¶ 19; Holmes Decl. ¶ 6; Barnes Decl. ¶ 13.  Plaintiffs submit
16 evidence of a "Notice to Employee" from Defendant to Basham that lists her hourly rate as
17 "variable."  [Docket No. 20-1 (Cordero Decl. Oct. 20, 2023) ¶ 11, Ex. 4.]

18 Others state they are not paid at overtime rates for overtime work, regardless of when it is
19 performed.  Murphy Decl. ¶ 6; Barnes Decl. ¶ 11.  Plaintiffs submitted several examples of
20 Basham and Raper's paystubs indicating that they worked over 40 hours per week and 80 hours
21 every two weeks.  Basham Decl. Ex. 1; Raper Decl. Ex. 1.

---

[6] Defendant objects to Lumpkin's declaration as irrelevant.  It contends that he was terminated over three years ago and therefore lacks personal knowledge of Defendant's policies and practices during the potential statutory period.  Opp'n 9.  The court denies this objection as moot as it does not consider Lumpkin's declaration in connection with deciding this motion.

Defendant also object to Murphy's declaration on the ground that it was signed by a different declarant.  *Id.*  As Plaintiffs submitted a signed version of Murphy's declaration with their reply, the court denies this objection as moot.  Defendant also objects to argument in the declaration of attorney Cordero, *see id.*, and to evidence Plaintiffs submitted on reply.  [Docket No. 29.]  These objections are denied as moot as the court does not rely on any of the challenged materials in deciding this motion.

The declarants also state that they had to sleep on couches or in sleeping bags on the floor because there were no sleeping accommodations at their clients' residences, or that they knew of other IAs that were required to do so. Barnes Decl. ¶ 15; Basham Decl. ¶ 29. The declarants also describe how Defendant required them to travel between locations during the same workday and required them to clock out during their travel. Raper Decl. ¶¶ 26-28; Holmes ¶ 5; Murphy Decl. ¶¶ 10-12; Barnes Decl. ¶ 17.

In response, Defendant dispute the merits of Plaintiffs' FLSA claims, arguing that its hourly rates of pay for overnight shifts and exclusion of overnight hours from overtime calculations are lawful. Opp'n 10-14. It also argues that it had a policy and practice of paying IAs for time spent traveling between locations, although it does not dispute that it required employees to clock out when traveling. *Id*. at 14-15. Defendant's arguments do not defeat conditional certification because at this stage, "[i]t is not the court's role to resolve factual disputes . . . or . . . decide substantive issues going to the ultimate merits." *Saleh*, 297 F. Supp. 3d at 1034 (quotation marks and citations omitted). Defendant does not actually challenge the existence of common policies and practices; instead, it challenges the merits of whether those policies and practices resulted in violations of FLSA. For purposes of this motion, Plaintiffs need only "claim a violation of the FLSA" and show that they are "similarly situated." *Campbell*, 903 F.3d at 1100. Based on the pleadings, declarations, and the record in this case, Plaintiffs have shown that they are similarly situated to other IAs regarding Defendant's alleged overtime practices, including the calculation of hours worked and overtime rates and failure to compensate hours worked in excess of 40 per week and 80 per two weeks at overtime rates, as well as Defendant's policy and practice of requiring employees to clock out when traveling between work locations. Accordingly, Plaintiffs have satisfied their "light" burden that conditional certification is appropriate. *See Droesch v. Wells Fargo Bank, N.A.*, No. 20-cv-06751-JSC, 2021 WL 1817058, at *4 (N.D. Cal. May 6, 2021).

### B. Scope of the Collective Action

Defendant argues that if a collective action is conditionally certified, the scope of the action should be limited to the two years prior to any members of the collective action filing opt-in

notices. Opp'n 15-16. It argues that Plaintiffs did not address willfulness in their motion and has not plausibly alleged willfulness. *Id*.

FLSA claims for unpaid compensation are governed by a two-year statute of limitations. 29 U.S.C. § 255(a). However, "a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." *Id*. "When plaintiffs allege willfulness, courts routinely approve a three-year notice period." *Saleh*, 297 F. Supp. 3d at 1035 (cleaned up; citation omitted). Here, Plaintiffs allege that Defendant "intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA" and that Defendant was aware or should have been aware that the challenged practices were unlawful. TAC ¶¶ 101, 181, 188. Plaintiffs also submit evidence that the United States Department of Labor ("DOL") investigated Defendant from October 2015 through September 2016 and found Defendant to be "in non-compliance" with the FLSA with respect to the payment of weekly overtime. Cordero Decl. ¶ 23, Ex. 9. The DOL calculated Defendant owed over $300,000 in overtime back wages. *Id*. at 6. This evidence supports Plaintiffs' allegation of willfulness. At this preliminary stage, the court concludes that Plaintiffs have plausibly alleged willfulness. Accordingly, notice must be provided to all current and former IAs who worked for Defendant within the proposed three-year period.

As to the proposed liability period, for individuals who are "specifically named as a party plaintiff in the complaint," their claims are deemed commenced on the date they file their "written consent to become a party plaintiff . . . in the court in which the action was commenced." 29 U.S.C. § 256. In this case, Plaintiffs Basham, Raper, and Pepper filed consents to sue under the FLSA on December 1, 2023, and Plaintiffs conceded at the hearing that the three-year statute of limitations for Basham, Raper, and Pepper's FLSA claims ran until December 1, 2023. As to the proposed collective action members, opt-in plaintiffs' claims are "deemed 'commenced' from the date [their] opt-in form[s] [are] filed with the district court." *Campbell*, 903 F.3d at 1104 (citing 29 U.S.C. § 256).[7] Accordingly, the court conditionally certifies a collective action of "all current

---

[7] A collective action under the FLSA differs from a Rule 23 class action, where the statute of limitations is tolled when the complaint is filed. *See Coppernoll v. Hamcor, Inc.*, No. C 16-05936

1    and former non-exempt employees who worked for Tailored Living Choices, LLC in the State of

2    California in the position of Instructional Assistant at any time from December 1, 2020 through

3    the present."

**C.    Notice**

"Once a collective class has been conditionally certified, potential FLSA collective members are entitled to 'accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions as to whether to participate.'" *Droesch*, 2021 WL 1817058, at *4 (quoting *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989)). "[T]he form and timing of notice . . . is largely a question of 'case management,' and thus [is] a subject of substantial judicial discretion." *Campbell*, 903 F.3d at 1110 (internal citation omitted).

Plaintiffs submitted a proposed notice to the putative collection action members, opt-in form, and reminder notice and ask the court to rule on these notices in connection with this motion.  Cordero Decl. ¶¶ 25-27, Exs. 11 (proposed notice), 12 (proposed opt-in form), 13 (proposed reminder notice).  Plaintiffs further ask that the court authorize dissemination of the notices via a third-party administrator through mail, email, text message, and a website through which opt-in members can submit consent forms, as well as a reminder postcard to be sent 21 days before the opt-in deadline.  They seek a 90-day notice period.  Plaintiffs also request that within 14 days of the court's ruling on this motion, Defendant provide to Plaintiffs' counsel an Excel file containing the (1) full name, (2) job title, (3) dates of employment, (4) last known address, (5) last known cell phone number, (6) location of employment, (7) employee number or ID, (8) social security number (last four digits only) and (9) last known email address for all IAs employed by Defendant during the time period certified by the court.  Plaintiffs did not provide details in their motion about the third-party administrator but stated at the hearing that they will meet and confer with Defendant to select an administrator, and that Plaintiffs' counsel will pay the costs associated with providing notice.

Defendants do not object to Plaintiffs' proposal regarding administration of notice but

---

WHA, 2017 WL 1508853, at *1 (N.D. Cal. Apr. 27, 2017).

challenge several aspects of Plaintiffs' proposed notice and opt-in form, as follows:

First, the proposed notice includes a statement that "[i]f there is no recovery, you will not be required to pay Plaintiffs' attorneys for any of their fees or costs." Proposed Notice 2. Defendants argue that this provision should also state that potential collective action members may be liable for payment of costs to Defendant should it prevail in the action. Opp'n 17-18 (citing *Labrie v. UPS Supply Chain Sols., Inc.*, No. C08-3182 PJH, 2009 WL 723599, at *8 (N.D. Cal. Mar. 18, 2009) (ordering parties to include "a statement explaining that potential plaintiffs may share in liability for payment of costs if [the defendant] prevails in this action" in order "to provide potential plaintiffs a 'fair statement of their rights.'" (citation omitted)). At the hearing, Plaintiffs' counsel stated that counsel will pay all taxable costs in the event that Defendant prevails. Accordingly, the notice need not contain language that costs could be assessed against members of the collective action.

Next, the proposed notice includes the following statement about the statute of limitations:

> The FLSA has time limits called statutes of limitations. These limitations stop running when you join a lawsuit. If you do not join the lawsuit or start your own lawsuit, your limitations period will continue to run and eventually your right to bring an action may be time barred. Keep this in mind when making your decision on how to proceed.

Proposed Notice 3. Defendants contend that the last sentence of the foregoing paragraph is an attempt "to try and scare potential plaintiffs and persuade them into joining the action" and lacks neutrality and asks the court to strike the final sentence. Opp'n 18. The court agrees that the statement is not sufficiently neutral. *See Hoffman-La Roche*, 493 U.S. at 174 ("[i]n exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality. To that end, trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action."). The last sentence of the paragraph about the statute of limitations shall be stricken from the notice.

Next, the proposed notice states that "[a]dditional information can be obtained by contacting the Plaintiffs' lawyers listed below" and provides the contact information for Plaintiffs' attorneys only. Proposed Notice 4-5. Defendants argue that "[t]here is no reason for the Notice to

1   be so one-sided and to exclude defense counsel's contact information." Opp'n 18. The notice

2   shall include contact information for Plaintiffs' counsel and defense counsel along with clear

3   language explaining that Plaintiffs' counsel seek to represent employees and defense counsel

4   represents Tailored Living Choices, LLC.

5         Defendant also challenges a portion of the proposed notice's anti-retaliation provision,

6   which states:

> It is a violation of federal law for TLC to discriminate in any manner, or to retaliate against your for taking part in this case. If you believe that you have been penalized, discriminated against, or disciplined in any way as a result of your receiving this notice, considering whether to join this lawsuit, or actually joining this lawsuit, you should contact an attorney.

Proposed Notice 4. Defendant argues that the final sentence should be stricken because encouraging potential plaintiffs to contact a lawyer is beyond the scope of the notice's purpose. Opp'n 19. Defendant's objection is well-taken. The purpose of the notice is to provide potential plaintiffs "with a neutral discussion of the nature of, and their rights in" this action. *See Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 540 (N.D. Cal. 2007). The last sentence of the foregoing provision shall be stricken from the notice.

      Finally, Defendant notes typographical errors in the proposed notice and opt-in form, set forth in the chart below in bold. Plaintiff shall revise these materials to correct the following errors:

| Plaintiffs' Proposed Notice with Typo | Corrections |
| --- | --- |
| "On [INSERT DATE], the federal Northern District Court of California overseeing this case granted "conditional certification" for the case to proceed as a "collective action" and **direct** that notice of…" Proposed Notice at p. 1. | "On [INSERT DATE], the federal Northern District Court of California overseeing this case granted "conditional certification" for the case to proceed as a "collective action" and **directed** that notice of…" |
| "TLC denies the merits of the claims and | "TLC denies the merits of the claims and |

12

| | |
|---|---|
| **contend** that they properly paid Instructional Assistants under the Fair Labor Standards Act." Proposed Notice at p. 2. | **contends** that they properly paid Instructional Assistants under the Fair Labor Standards Act." |
| "…it must be postmarked no later than [insert date 90 days from mailing]**.** **To** be considered timely." Proposed Notice at p. 2. | "…it must be postmarked no later than [insert date 90 days from mailing] **to** be considered timely." |
| "You will be compensated for their fees and costs either by receiving a portion of the recovery **of** by a separate payment by TLC (or a combination of the two)," Proposed Notice at p. 2. | "You will be compensated for their fees and costs either by receiving a portion of the recovery **or** by a separate payment by TLC (or a combination of the two)," |
| "If you **choose to choose to** submit the Consent Form electronically,…" Proposed Notice at p. 3. | "If you **choose to** submit the Consent Form electronically," |
| "It is a violation of federal law for TLC to discriminate in any manner, or to retaliate against **your** for taking part in this case." Proposed Notice at p. 3. | "It is a violation of federal law for TLC to discriminate in any manner, or to retaliate against **you** for taking part in this case." |
| "I WANT TO JOIN THE **WAITLIST**…" Proposed Opt-In Form at p. 1. | "I WANT TO JOIN THE **LAWSUIT**…" |

### IV.   CONCLUSION

For the foregoing reasons, Plaintiffs' motion for conditional FLSA collective action certification is granted in part. The court conditionally certifies the following collective action: "All current and former non-exempt employees who worked for Tailored Living Choices, LLC in the State of California in the position of Instructional Assistant at any time from December 1, 2020 through the present."

The parties shall immediately meet and confer regarding the selection of a third-party

1 administrator to effect notice via mail, email, text message, and a website. Within seven days of
2 the date of this Order, Plaintiffs shall submit for the court's approval a revised proposed notice,
3 opt-in form, and reminder notice incorporating the changes as ordered herein. Within 14 days of
4 the date of this Order, the parties shall submit a joint statement identifying the agreed-upon
5 administrator and setting forth the methods of effecting notice. By the same deadline (14 days of
6 the date of this Order), Defendants shall provide to Plaintiffs' counsel an Excel file containing the
7 (1) full name, (2) job title, (3) dates of employment, (4) last known address, (5) last known cell
8 phone number, (6) location of employment, (7) employee number or ID, (8) social security
9 number (last four digits only) and (9) last known email address for all IAs employed by Defendant
10 at any time from December 1, 2020 to the present.

**IT IS SO ORDERED.**

Dated: February 16, 2024



Donna M. Ryu
Chief Magistrate Judge

14