1  GRAHAM**HOLLIS** APC
2  Vilmarie Cordero (SBN 268860)
   vcordero@grahamhollis.com
3  Taylor M. Gee (SBN 349199)
   tgee@grahamhollis.com
4  3555 Fifth Avenue Suite 200
5  San Diego, California 92103
   Telephone: 619.692.0800
6  Facsimile:  619.692.0822

7  Attorneys for Plaintiffs Genevieve Basham, Jennifer
8  Raper, George Pepper, and aggrieved employees.

9              **UNITED STATES DISTRICT COURT**

10        **NORTHERN DISTRICT OF CALIFORNIA - OAKLAND DIVISION**

11  GENEVIEVE BASHAM, JENNIFER          Case No.:  4:23-cv-02678-DMR
    RAPER and GEORGE PEPPER,
12  individually and on behalf of all current and   **CLASS & REPRESENTATIVE ACTION**
    former similarly situated employees and/or
13  all aggrieved employees of Defendants in
14  the State of California,                         **MEMORANDUM OF POINTS AND**
                                                     **AUTHORITIES IN SUPPORT OF**
15                                                   **PLAINTIFFS' MOTION FOR**
               Plaintiffs,                           **PRELIMINARY APPROVAL OF CLASS**
16                                                   **AND COLLECTIVE ACTION**
          v.                                         **SETTLEMENT**
17
18  TAILORED LIVING CHOICES, LLC, and    Judge:      Hon. Donna M. Ryu
    DOES 1 THROUGH 50, inclusive,        Crtrm:      4, 3rd Floor
19
20               Defendants.             Complaint Filed: December 29, 2021
                                         Removal Date: May 30, 2023
21                                       Trial Date: May 5, 2025
22
23
24
25
26
27
28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION
SETTLEMENT

**TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................................ 1

II.   PROCEDURAL AND FACTUAL BACKGROUND .............................................. 1

      A.    Plaintiffs' Complaints .................................................................................. 1

      B.    FLSA Conditional Certification .................................................................. 2

      C.    ADR ............................................................................................................. 3

      D.    Defendant Strongly Denies Plaintiffs' Claims ........................................... 3

      E.    Investigation and Discovery Completed ...................................................... 3

III.  SUMMARY OF SETTLEMENT ............................................................................ 5

      A.    Settlement Payment Terms ........................................................................... 5

      B.    Class Definitions and Allocation of the NSF Among the Classes: ............. 6

      C.    Calculation of Individual Settlement Payments .......................................... 7

      D.    Scope of the Releases .................................................................................. 8

      E.    Allocation of Unclaimed Funds .................................................................. 9

      F.    Administration and Notice Procedure .......................................................... 9

IV.   THE PROPOSED CALIFORNIA SETTLEMENT CLASS SHOULD BE

      CERTIFIED FOR SETTLEMENT PURPOSES .............................................. 10

      A.    The Settlement Class Contain Numerous Members ................................. 11

      B.    Common Questions of Law Exists As to the Class .................................. 11

      C.    All Class Representatives Are Typical and Adequately Represent the

            Classes ....................................................................................................... 12

      D.    Plaintiffs' Meet the Predominance and Superiority Rule 23(b)(3)

            Requirements ............................................................................................. 13

V.    Legal Standard for Preliminary Approval of a Class and Collective Action

      Settlement .............................................................................................................. 13

      A.    The Settlement is Fair, Adequate, and Reasonable ................................. 14

            a.    Strength of Plaintiffs' Case ........................................................... 15

            b.    Risk, Expense, Complexity, and Likely Duration of Further

Graham**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

Litigation ................................................................................................. 16

    c.    Amount Offered in Settlement .................................................... 16

    d.    Extent of Discovery Completed and the State of the Proceedings ............ 18

    e.    Experience and Views of Counsel ............................................... 18

    f.    Presence of a Government Participant ......................................... 18

B.    The Settlement Has No Obvious Deficiencies ......................................... 19

    a.    Courts Regularly Grant Class Representative Service Awards to Class Representatives .................................................................. 20

    b.    The Significant Amount of Work Performed by Class Counsel Supports the Request for Attorney's Fees and Costs ................................. 21

VI.    THE PROPOSED NOTICE IS FAIR AND ADEQUATE ................................................ 23

VII.    CONCLUSION ........................................................................................... 25

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

TABLE OF CONTENTS

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Adoma v. Univ. of Phoenix, Inc.*,
913 F. Supp. 2d 964 (E.D. Cal. 2012) .................................................................... 19

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ................................................................................................ 13

*Boyd v. Bechtel Corp.*,
485 F. Supp. 610 (N.D. Cal. 1979) ........................................................................ 18

*Churchill Vill., L.L.C. v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004) .................................................................................. 23

*Clarke v. Insight Global, Inc.*,
2015 WL 13828417 (S.D. Cal. Jan. 5, 2015) ......................................................... 22

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992) ................................................................................ 13

*Collier v. Delaware N. Companies Travel Hosp. Servs., Inc.*,
No. EDCV 17-1938-R, 2018 WL 9457989 (C.D. Cal. Sept. 18, 2018) ................ 22

*Cotter v. Lyft, Inc.*,
193 F. Supp. 3d 1030 (N.D. Cal. 2016) ................................................................. 19

*Custom LED, LLC v. eBay, Inc.*,
2013 WL 6114379 (N.D. Cal. Nov. 20, 2013) ....................................................... 19

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) ................................................................................................ 23

*Estorga v. Santa Clara Valley Transportation Auth.*,
No. 16-cv-02668-BLF, 2020 WL 7319356 (N.D. Cal. Dec. 11, 2020) .................. 14

*Ettedgui v. WB Studio Enterprises Inc.*,
No. 2:20-cv-08053-MCS-JDE, 2020 WL 11421803 (E.D. Cal. 2022) .................. 22

///

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

*Garner v. State Farm Mut. Auto Ins. Co.*,
  No. CV081365CW (EMC), 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ......................... 18

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ................................................................... 13

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir. 1992) .................................................................... 13

*Hesse v. Sprint Corp.*,
  598 F.3d 581 (9th Cir. 2010) .................................................................... 19

*Hopson v. Hanesbrands Inc.*,
  No. CV-08-0844 EDL, 2009 WL 928133 (N.D. Cal. Apr. 3, 2009) ...................................... 19

*Hose v. Washington Inventory Service, Inc.*,
  2020 WL 3606404 (S.D. Cal. Jul. 5, 2020) .......................................................... 22

*In re Hyundai & Kia Fuel Econ. Litig.*,
  926 F.3d 539 (9th Cir. 2019) .................................................................... 11

*Ingram v. The Coca- Cola Co.*,
  200 F.R.D. 685 (N.D. Ga. 2001) .................................................................. 20

*McKenzie v. Fed. Exp. Corp.*,
  No. CV 10-02420 GAF PLAX, 2012 WL 2930201, at *6 (C.D. Cal. July 2,
  2012) ......................................................................................... 19

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) .................................................................... 22

*Millan v. Cascade Water Services, Inc.*,
  310 F.R.D. 593 (E.D. Cal. 2015) ................................................................. 20

*Moreno v. Cap. Bldg. Maint. & Cleaning Servs., Inc.*,
  No. 19-CV-07087-DMR, 2021 WL 1788447 (N.D. Cal. May 5, 2021) ................................. 14

*Nen Thio v. Genji, LLC*,
  14 F. Supp. 3d 1324 (N.D. Cal. 2014) (Cousins, J.) ............................................... 15

///

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

*Nunez v. BAE Sys. San Diego Ship Repair Inc.*,
   292 F. Supp. 3d 1018 (S.D. Cal. 2017)...................................................................... 15, 19

*Officers for Justice v. Civil Service Commission*,
   688 F.2d 615 (9th Cir. 1982) ............................................................................................... 17

*Ontiveros v. Zamora*,
   303 F.R.D. 356 (2014) ........................................................................................................ 23

*In re Oracle Secs. Litig*.,
   No. 90–0931, 1994 WL 502054 (N.D. Cal. June 18, 1994) ................................................ 20

*Pelletz v. Weyerhaeuser Co.*,
   592 F. Supp. 2d 1322 (W.D. Wash. 2009)........................................................................... 20

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985)............................................................................................................ 23

*Pilkington v. Cardinal Health, Inc.* (*In re Syncor ERISA Litig.*),
   516 F.3d 1095 (9th Cir. 2008) ........................................................................................... 14

*Rippee v. Boston Market Corporation*,
   2006 WL 8455400 (S.D. Cal. Oct. 10, 2006) ..................................................................... 22

*Selk v. Pioneers Mem'l Healthcare Dist.*,
   159 F. Supp. 3d 1164 (S.D. Cal. 2016)............................................................................... 15

*Silber v. Mabon*,
   18 F.3d 1449 (9th Cir. 1994) ............................................................................................. 23

*Slaven v. BP Am., Inc.*,
   190 F.R.D. 649 (C.D. Cal. 2000) ....................................................................................... 11

*Smith v. Tower Loan of Miss., Inc.*,
   216 F.R.D. 338 (S.D. Miss. 2003) ...................................................................................... 20

*Spann v. J.C. Penney Corp.*,
   314 F.R.D. 312 (C.D. Cal. 2016) ....................................................................................... 14

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ....................................................................................... 13, 21

4:23-cv-02678-DMR
TABLE OF AUTHORITIES

*In re Tableware Antitrust Litig.*,

    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ........................................................... 14, 16

*Uschold v. NSMG Shared Servs., LLC*,

    333 F.R.D. 157 (N.D. Cal. 2019) ...................................................................... 17, 23

*Van Vranken v. Atlantic Richfield Co.*,

    901 F. Supp. 294 (N.D. Cal. 1995) .......................................................................... 23

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,

    No. 2672 CRB (JSC), 2017 WL 672820 (N.D. Cal. Feb. 16, 2017) ................. 11, 13

*Wal-Mart Stores, Inc. v. Dukes*,

    564 U.S. 338 (2011) ..................................................................................................... 12

**State Cases**

*Bell v. Farmers Ins. Exch.*,

    115 Cal. App. 4th 715 (2004) ..................................................................................... 20

*Laffitte v. Robert Half Int'l Inc.*,

    1 Cal. 5th 480 (2016) .................................................................................................. 22

*Serrano v. Priest*,

    20 Cal. 3d 25 (1977) ................................................................................................... 22

**Federal Statutes**

Fair Labor Standards Act........................................................................................ *passim*

**State Statutes**

California Civil Code § 1542 ............................................................................................ 9

California Labor Code § 2698 et seq........................................................................ *passim*

Labor Code § 226(e) ........................................................................................................ 3

**Rules**

Fed. R. Civ. P. 23................................................................................................... 14, 15

Fed. R. Civ. P. 23(a) ...................................................................................................... 11

Fed. R. Civ. P. 23(a)(2) .................................................................................................. 12

Fed. R. Civ. P. 23(b) ...................................................................................................... 11

TABLE OF AUTHORITIES

Graham**Hollis** APC
3555 Fifth Avenue Suite 200
San Diego, California 92103

Fed. R. Civ. P. 23(e) ........................................................................................... 13, 14

Fed. R. Civ. P. 23(e)(1)(B) ........................................................................................ 14

Fed. R. Civ. P. 23(e)(1)(C) ........................................................................................ 14

Fed. R. Civ. P. (b)(3) ................................................................................................. 13

**Other Authorities**

Alba Conte & Herbert Newberg, *Newberg on Class Actions* (4th ed. 2002), §

    11.41 ..................................................................................................................... 13

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

# I.   INTRODUCTION

Plaintiffs Genevieve Basham, Jennifer Raper, and George Pepper ("Plaintiffs") seek preliminary approval of a $580,000 class action, Fair Labor Standards Act ("FLSA") collective action, and Private Attorneys General Act of 2004 ("PAGA"), California Labor Code § 2698, *et seq.*, PAGA representative action Settlement Agreement ("Settlement" or "SA") on behalf of approximately 450 non-exempt Instructional Assistants entered with Defendant Tailored Living Choices, LLC ("Defendant" or "TLC"). [See Declaration of Vilmarie Cordero in Support of Plaintiffs' Motion for Preliminary Approval ("Cordero Decl."), at ¶ 4; Ex. 1 to Cordero Decl.] The Settlement resulted after over three years of active litigation and motion practice, including the filing of a motion seeking conditional certification on behalf of the FLSA Collective members. Plaintiffs and Defendant reached the settlement only after extensive investigation and discovery had been completed, including the analysis and review of Defendant's policies, class members' time and payroll records, in-depth employee interviews, several depositions, and two mediations. The proposed Settlement is the result of hard-fought negotiations before a prominent class action mediator. The Settlement, if approved, will provide significant monetary recovery to the Class and Collective members, as well as to the aggrieved employees, and it satisfies all the criteria for preliminary approval under Federal Law.

# II.   PROCEDURAL AND FACTUAL BACKGROUND

## A.   Plaintiffs' Complaints

Plaintiffs filed the original Complaint on December 29, 2021, in the Superior Court for the State of California, County of Napa, alleging individual, Class, and PAGA claims under California law on behalf of all other similarly situated non-exempt employees working for TLC as Instructional Assistants at any time from June 29, 2017 to the present (the "Class"). [Dkt. 1–2, Exs. 1-3, at pp. 4–57.] Among others, Plaintiffs claim Defendant failed to (1) provide meal periods, (2) provide rest periods, (3) pay minimum and regular wages, (4) pay overtime wages, (5) indemnify for all incurred and necessary business expenses, (6) provide accurate itemized wage statements, and (7) comply with California's unfair competition laws. [Cordero Decl. ¶ 18.] Plaintiffs also allege a PAGA representative action on behalf of all Instructional Assistants that

worked for TLC at any time from October 25, 2020, to the present (the "PAGA Employees"), based on the same facts and Labor Code violations alleged in the Complaint. [*Id.*] On April 27, 2023, Plaintiffs filed a First Amended Complaint adding causes of actions under California law for inaccurate records and untimely payment of wages upon separation of employment and adding two new causes of action for failure to pay minimum and overtime wages under the FLSA. [Dkt. No. 1–2; Ex. 21 at pp. 323–370.] On May 30, 2023, Defendant removed the action to this Court. [Dkt. 1.] Thereafter, Plaintiffs amended their Complaint to remove the California overtime cause of action. [Dkt. 19.] On November 30, 2023, Plaintiffs filed their Third Amended Complaint to add George Pepper as an additional named Plaintiff and Class Representative. [Dkt. 25.]

### B.   FLSA Conditional Certification

The parties engaged in substantive formal discovery. [Cordero Decl. at ¶¶ 48-60.] On October 20, 2023, Plaintiffs Basham and Raper filed their Motion for Conditional Class Certification, seeking certification of the "FLSA Collective," the "Minimum Wage Subclass," and the "Overtime Subclass." [Dkt. 20, Dkt. 34.] Defendant strongly opposed Plaintiffs' Motion for Conditional Class Certification. [Dkt. 22.] Defendant disputed the merits of Plaintiffs' FLSA claims, strongly arguing that its hourly rates of pay for overnight shifts and exclusion of overnight hours were lawful. [Defendant's Opposition to Plaintiffs' Motion for Conditional Certification ("Opp'n") 10-14; Dkt. 22, at pp. 15-19.] In support of its Opposition, Defendant submitted the Declaration of Arnab Chakrabarti, [Dkt. 22-2.], and copies of the different company policies relating to the payment of overtime for the Live-In employees. [Dkt. 22-2 at pp. 8-10.] On February 16, 2024, and after hearing oral argument, this Court issued an Order granting Conditional Certification of the FLSA Collective. [Dkt. 38.] Specifically, the Court conditionally certified the following FLSA Collective:

> "All current and former non-exempt employees who worked for Tailored Living Choices, LLC in the State of California in the position of Instructional Assistant at any time from December 1, 2020 through the present."

[Dkt. 38, at p. 13.] The parties met and conferred about the notice to the FLSA Collective and submitted a Joint Statement re Amended Notice and Consent to Join Form. [Dkt. No. 39.] On March 5, 2024, this Court issued an Order relating to the Third-Party Administration of the Notice.

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

[Dkt. 47.] Thereafter, the parties, through the Court-approved Third-Party Administrator—CPT Group, Inc.—disseminated the Court-approved FLSA Consent to Join Form. [Cordero Decl. ¶30.] The Third-Party Administrator sent the FLSA Consent to Sue Form, as ordered by the Court, and a total of seventy-eight (78) FLSA Collective Members returned valid signed Consent to Join Forms. [Cordero Decl. ¶¶30-32; Exhibits 4-5 to Cordero Decl.]

### C.    ADR

The parties made a good faith effort to conduct a meaningful mediation on December 21, 2022, with skilled mediator, Scott Markus after Defendant provided initial responses to Plaintiffs' first set of written discovery in the Superior Court action. [Cordero Decl. ¶¶19-20.] Moreover, on May 25, 2023, the parties engaged in a voluntary settlement conference with the honorable Raymond A. Guadagni. [*Id.* at ¶22.] Finally, on May 28, 2024, and while the Court-ordered notice process to the FLSA Collective members was still on-going, the parties participated in a full-day mediation with the experienced mediator Daniel Turner. [*Id.* at ¶ 33.] The parties did not reach a settlement but agreed to continue mediation efforts. On June 7, 2024, the parties agreed, on principle, to settle the Action and promptly gave notice to this Court. [Dkt. 48.]

### D.    Defendant Strongly Denies Plaintiffs' Claims

Defendant vehemently denies any liability or wrongdoing of any kind associated with the claims alleged in this action. [Opp'n" 10-14; Dkt. 22 at pp. 15-19.] Defendant maintains it consistently complied with state and federal laws and contends that certification cannot be maintained given the unique job duties of Class and FLSA Collective Members. [Cordero Decl. ¶¶ 42-47.] In addition, Defendant contends that Plaintiffs and Class members are not entitled to statutory penalties under Labor Code § 226(e) due to their good faith defense. [*Id.* at ¶45.] Defendant also remains adamant that Plaintiffs will not be able to demonstrate liability under the PAGA. [*Id.* at 46-47.]

### E.    Investigation and Discovery Completed

Class Counsel has diligently litigated and formally investigated the Class and FLSA Collective claims alleged against Defendant. [Cordero Decl., ¶¶ 48-57.] Class Counsel is knowledgeable about and has conducted extensive research with respect to the applicable law and

Graham**Hollis** APC
3555 Fifth Avenue Suite 200
San Diego, California 92103

potential defenses to the claims of the Class and FLSA Collective Members. [*Id.*] Over the course of the litigation, the parties engaged in voluminous written discovery, including several sets of Interrogatories, Requests for Production of Documents, and Requests for Admissions. [*Id.* at ¶¶ 51-55.] Defendant produced several thousands of pages of documents, including written policies and procedures, Plaintiffs' employee files, time and pay records for the Plaintiffs and the Class members, as well as exchanged several written declarations and other relevant data regarding the number of workweeks and pay periods during the Class and FLSA Collective periods. [*Id.*]

Defendant took the deposition of all three named Plaintiffs, and Plaintiffs took several depositions of Defendants' representatives. [*Id.* at ¶ 52.] Moreover, Defendant provided contact information for all instructional assistants from June 29, 2017 to March of 2024 [*Id.* at ¶¶ 54-55.] With the information provided by Defendant, Class Counsel was able to conduct in-depth interviews and prepare a detailed analysis of the maximum liability exposure for Defendant if Plaintiffs succeeded at trial on their claims. [*Id.* at ¶¶ 54-57.]

The exchange of information and documents was comprehensive and enabled the parties to sufficiently assess the strengths and weaknesses of their respective positions during arm's-length negotiations at mediation. [*Id.* at ¶58.] Class Counsel had sufficient information to determine the number of work weeks to calculate a close estimation of potential damage and penalty exposure to Defendant. [*Id.* at ¶¶ 54-57; 63- 77.] The parties participated in their second private mediation session after three years of extensive discovery and vigorous litigation. [*Id.* at ¶58.] At all times, the parties' negotiations were hard-fought, conducted at arm's-length, and free from collusion. [*Id.* at ¶¶57-62.] Each party was represented at the mediation by experienced class and collective action attorneys with specialized knowledge of class and collective action employment law. Plaintiffs thoroughly investigated and evaluated the claims prior to the mediation. [*Id.* at ¶¶ 63-77.] With the assistance of the mediator, the parties discussed the many difficult legal and factual issues of this case. [*Id.*] During this process, both sides were required to make reasonable compromises in light of the facts, issues, and risks presented. [*Id.*]

In particular, Class Counsel considered the uncertainty and risks of further litigation, and the difficulties inherent in further litigation. [*Id.* at ¶¶78-96.] Class Counsel also considered the

Graham**Hollis** APC
3555 Fifth Avenue Suite 200
San Diego, California 92103

burdens of proof necessary to establish and maintain class certification, and to also establish liability and the likelihood of defeating all defenses raised by Defendant. [*Id*.] All of these considerations indicated that the best interests of the Class and FLSA Collective Members would be served by a settlement of the action in the manner and upon the terms set forth in the Settlement Agreement. [*Id*.] Thus, the parties ultimately reached an agreement at the mediation, which the parties and their counsel have concluded to be a fair, reasonable, and adequate resolution of this action. [*Id*.]

## III.   SUMMARY OF SETTLEMENT

### A.   Settlement Payment Terms

1.   <u>The Gross Settlement Amount ("GSA")</u>. Defendant will pay the maximum amount of $580,000.00. This amount does not include the employer's share of the payroll taxes. [SA, § 4.1.]

2.   <u>The Escalator Provision</u>.  Defendant estimates that as of the date of April 2, 2024, Class Members worked 40,650 workweeks since June 29, 2017. In the event the total workweeks for the Class Members exceed Defendant's estimate by 10 percent (e.g. exceeds 44,711 weeks), Defendant shall have the option to:

(i)   increase the GSA on a pro-rata basis equal to the percentage increase in the number of workweeks worked by Class Members during the Class Period (for example if the actual workweeks exceed the estimate by 1%, the GSA would increase by 1%); or

(ii)   shorten any release period such that it ends on either April 2, 2024 or the date in which the total number of Qualifying Workweeks for Class Members exceeds 44,711 full work weeks.  [SA, § 4.1.1.]

3.   <u>The Net Settlement Fund ("NSF")</u>. The Net Settlement Fund means the portion of the GSA available for distribution to Participating Class Members after the deduction of the Court-approved (1) attorney's fees, (2) costs to Class Counsel, (3) Settlement Administrator's Fees, (4) Class Representatives Service Awards, and (5) PAGA Payment from the GSA.  [SA, § 4.2.] The NSF is estimated to be $266,666.66. [Cordero Decl., ¶ 118.]

4.      Individual Settlement Payment(s). Class Members and FLSA Collective Members will receive their corresponding share of the NSF, which is estimated to be $266,666.66, without submitting a Claim form. The Court-appointed Settlement Administrator will send all Class Members who do not request exclusion their corresponding share of NSF.  [SA, § 4.3.]

5.      The PAGA Payment. The parties agree to a $20,000.00 payment from the GSA in exchange for the PAGA Release. 75% of the PAGA Payment will be allocated to the LWDA and the remaining 25% fees to PAGA Employees. [SA, § 4.7.]

6.      Settlement Administration's Costs. Class Counsel seeks recovery, not to exceed $35,000.00, for the actual and direct fees and costs reasonably incurred by the Settlement Administrator in administering the settlement, which shall not exceed $35,000.00. [SA, § 4.8.]

7.      Class Counsel's Attorney's Fees. Class Counsel seeks an award of attorney's fees and costs for all the worked performed, and to be performed, in this action on behalf of the Class. Class Counsel seeks, and Defendant does not oppose, an award of 1/3 of the GSA, or $193,333.34 as attorney's fees. [SA, §4.4.] To date, Class Counsel's loadstar in the case for the work already performed on behalf of the Class exceeds $595,000. [Cordero Decl., ¶¶ 152-154.]

8.      Class Counsel's Costs. Class Counsel further seeks recovery of the actual incurred costs in the litigation. Defendant will not object to a request for reimbursement of actual out-of-pocket costs not to exceed $35,000. [SA, § 4.5.]

9.      Class Representatives Service Award. Plaintiffs, in recognition of their effort in obtaining the benefits of the Settlement, and in recognition for their willingness to provide a full and separate general release of any and all claims against Defendant, will each seek a Service Award not to exceed $10,000. [SA, § 4.6.]

**B.      Class Definitions and Allocation of the NSF Among the Classes:**

1.      Settlement Class or Class. The Settlement Class means all current and former employees of TLC who performed work as an Instructional Assistant at any time from June 29, 2017, through the date the Court grants Preliminary Approval of the Settlement. [SA, § 1.2.1.] The California Settlement Class will be allocated forty percent (40%) of the Net Settlement Fund, ///

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT

currently estimated at $106,666.67 (the "California Settlement Class Allocation"). [SA, § 4.2.1(a).]

> 2.   The Waiting Time Penalties Subclass. The Waiting Time Penalties Subclass consists of all members of the Settlement Class who separated from their employment with Defendant at any time from June 29, 2018, through the date of Preliminary Approval of the Settlement. [SA, § 1.2.] The Waiting Time Penalties Subclass will be allocated thirty percent (30%) of the Net Settlement Amount, currently estimated at $80,000.00 (the "Waiting Time Subclass Allocation"). [SA, § 4.2.1(b).]

> 3.   The FLSA Collective. The FLSA Collective means all current and former employees of TLC who performed work as an Instructional Assistant at any time between December 1, 2020, through the date of Preliminary Approval of the Settlement. [SA, § 1.2.3.] The FLSA Collective will be allocated thirty percent (30%) of the Net Settlement Amount, currently estimated at $80,000 ("FLSA Allocation"). [SA, § 4.2.1(c).]

## C.   Calculation of Individual Settlement Payments

> 1.   California Settlement Class: Individual Settlement Payments will be calculated on a pro-rata basis according to the number of work weeks worked—workweeks where the individual worked at least one day of the week, and the Class member was not on vacation or a leave of absence for the entire week—by the Class member as an Instructional Assistant during the Class Period. [SA, § 4.3.1.] Therefore, Participating Class Members shall be allocated a pro-rata share of the California Settlement Class Allocation—currently estimated at $106,666.67—based on their own qualifying workweeks, [Cordero Decl. ¶¶ 117-120] using the following formula:

> **Individual Settlement Payment**: (California Settlement Class Allocation) x (Participating Class Member's Qualifying Workweeks/Total No. of Qualifying Workweeks for All Participating Class Members)

> 2.   Waiting Time Penalties Subclass: Participating Class Members that are also members of the Waiting Time Penalties Subclass shall receive an additional amount from the

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

NSF. [SA, § 4.3.2.] Waiting Time Penalties Subclass Members will each receive an equal amount of the Waiting Time Penalties Subclass Allocation—currently estimated at $80,000—using the following formula: ($80,000/Total Number of Waiting Time Penalties Subclass Members). (Cordero Decl. ¶¶ 117-121.]

3.    <u>FLSA Collective</u>: FLSA Collective Members that opted in the Settlement (either by submitting a Consent to Join Form or by cashing their FLSA Settlement Check) shall receive an additional amount from the NSF. FLSA Collective Members will each receive their pro rata share of the FLSA Allocation—currently estimated at $80,000—based on their own qualifying workweeks. [Cordero Decl. ¶¶ 122.]

**D.    Scope of the Releases**

The Settlement Agreement releases Defendant, its current and former subsidiaries, affiliates, shareholders, members, employees, insurers, agents, predecessors, successors and assigns (the "Released Parties") of any liability resulting from the claims alleged, or that could have been allege in any of the Complaints filed. Specifically, the California Claims Release, FLSA Claims Release, and PAGA Release are as follows:

1.    <u>California Claims Release</u>: Upon the date that Defendant remits the Gross Settlement Amount to the Settlement Administrator, all Class Members who do not opt out of the Settlement will release the Released Parties of any and all claims or causes of action based on California laws and regulations alleged in any of complaints or amended complaints filed, or which could have been alleged based on the facts alleged, including any claims for unpaid wages (minimum wage, overtime or otherwise), the scheduling and timing of breaks, payment for breaks, the timing of wage payments, reimbursement of expenses, and Defendant's record keeping practices, for the Class period. Inclusive in this release will be any derivative liability under the Business and Professions Code, including any derivative liability under California law stemming from any actual or purported violations of the FLSA. [SA, § 13.3.]

2.    <u>FLSA Claims Release</u>: Upon the date that Defendant remits the Gross Settlement Amount to the Settlement Administrator, FLSA Collective members who submit or who have previously submitted a written Opt-In form, or who cash their FLSA Settlement Check

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

(which shall be deemed opting in) will release the Released Parties of any and all claims or causes of action under the FLSA alleged in the operative complaint, or which could have been alleged based on the facts actually alleged in any of the complaints or amended complaints filed in this Action, for the entirety of the FLSA Release Period. [SA, § 13.4.]

3.    PAGA Release: Upon the date that Defendant remits the Gross Settlement Amount to the Settlement Administrator, all PAGA Employees, regardless of whether they opt out of the Settlement, will release all claims for civil penalties under PAGA for each and every Labor Code violation alleged in any complaint or amended complaint filed in the Action, or which could have been alleged, based on the facts actually alleged, for the entirety of the PAGA Release Period. Inclusive in this release will be any potential derivative liability for civil penalties under the California Labor Code stemming from any actual or purported FLSA violations. [SA, § 13.2.]

4.    Class Representatives' Individual Releases: Plaintiffs' individual releases are significantly broader than the one applicable to the Class, and Plaintiffs further specifically waive the protections of section 1542 of the California Civil Code, which none of the Class, FLSA or PAGA Employees will do, if the Settlement is approved by the Court. [SA, § 4.6.3.]

**E.    Allocation of Unclaimed Funds**

No unclaimed amounts will revert to Defendant. [SA, § 11.1.] Class Members' Settlement Checks shall remain valid and negotiable for 180 days from the date of issuance and will be automatically cancelled if not cashed within that time, at which the check will be deemed null and void. [SA §§ 11.2-11.3.] After 30 days of the expiration of the settlement checks, the Settlement Administrator shall redistribute the uncashed funds on a pro rata basis if the remaining Net Settlement Fund exceeds the cost of redistribution. [SA, § 11.4] Otherwise, all uncashed checks and any unclaimed funds shall be transmitted to Legal Aid at Work—a non-profit organization, unrelated to any of the parties in the action, whose main mission is to help low-income families and marginalized communities to assert their workplace rights and advocate for employment laws in California. [SA, § 11.4.2; Cordero Decl. ¶¶ 129-134.]

**F.    Administration and Notice Procedure**

The parties agree to hire CPT Group, Inc., an experienced third-party administrator, to

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

serve as the Settlement Administrator, subject to Court approval. Within ten (10) business days after entry of the Preliminary Approval Order, Defendant shall provide the Class List to the Settlement Administrator. [SA, at § 8.1; Cordero Decl., ¶ 99.] Within fourteen (14) business days of receiving the Class List, the Settlement Administrator will mail the Class Notice via first class U.S. Mail to each Class and FLSA Collective Member. [SA, § 8.4.]

Prior to mailing, the Settlement Administrator will take reasonable steps to ensure that the Notice Packet is sent to all Class members. Therefore, prior to the mailing of the Notice to the Class Members, the Settlement Administrator shall perform a National Change of Address (NCOA) search and an Accurint (or substantially similar) in-depth skip-trace to obtain the best possible address for the Class members before it mails the notices. [SA, § 8.3.]

If a Class Notice is returned as undeliverable with a forwarding address, the Settlement Administrator will promptly resend the Class Notice to that forwarding address. [SA, § 8.8.1.] If a Class Notice is returned as undeliverable without a forwarding address, the Settlement Administrator shall conduct one or more address searches, including performing an Experian (or substantially similar) in-depth skip-trace or mass search on LexisNexis databases based on set criteria, and, upon obtaining a new or different address, immediately re-mail the Class or FLSA Collective Member's Class Notice. [SA, § 8.8.2.]

The Settlement Administrator will also set up a static website where Class and FLSA Collective Members can visit and download copies of important documents, including the Complaints, the Proposed Settlement Agreement, Plaintiffs' Motion for Preliminary Approval and Class Counsel's Motion for attorney's fees, and any Orders issued by this Court relating to the Settlement approval, including any Orders setting the date of the Final Approval Hearing. [Cordero Decl., ¶ 138; Proposed Class Notice, attached as Ex. A to the SA.]

## IV.    THE PROPOSED CALIFORNIA SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

The criteria for class certification are applied differently in litigation classes and settlement classes. In deciding whether to certify a litigation class, a district court must be concerned with manageability at trial. However, such manageability is not a concern in certifying a settlement

class where, by definition, there will be no trial." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556-57 (9th Cir. 2019). As noted above, "in deciding whether to certify a settlement class, a district court must give heightened attention to the definition of the class or subclasses. *Id*. (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("*Amchem*")). "[T]he aspects of Rule 23(a) and (b) that are important to certifying a settlement class are those designed to protect absentees by blocking unwarranted or overbroad class definitions. The focus is on whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives." *Id.* at 558 (quotation marks omitted) (quoting *Amchem*, 521 U.S. at 621).

### A.     The Settlement Class Contain Numerous Members

Here, the Class list sent by Defense counsel during the litigation of the case shows that the proposed California Settlement Class includes approximately 450 employees, of which approximately 350 are former employees. [Cordero Decl. ¶ 9.] Numerosity is satisfied. *See, e.g., In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. 2672 CRB (JSC), 2017 WL 672820, at *6 (N.D. Cal. Feb. 16, 2017) (quoting Rule 23(a)(1)) ("*Volkswagen*"); *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654 (C.D. Cal. 2000).

### B.     Common Questions of Law Exists As to the Class

Here, there are at least two main key issues that permeate the entire litigation: whether Class Members received all overtime compensation for the time worked and which Defendant considered "Sleep Time," under their overtime policies, and whether Defendant paid at least minimum wages under California law for all travel time when Class Members where required to clock-in after reporting to the first client location, but required to clock-out before they traveled to next client location during the same workday. Moreover, Defendant alleges they compensated the travel time using Google Maps to estimate the time traveled from one client's home to another rather than recording the actual Class Members spent in traffic and traveling from one location to another. After extensive investigation, time and pay records review, there is no dispute that Class Members were subject to the same "Sleep Time" and overtime policies; travel time policies, reimbursement policies for mileage and clock-in and clock-out procedures. These same common questions of law were already conditionally certified by this Court on behalf of the FLSA

Graham**Hollis** APC
3555 Fifth Avenue Suite 200
San Diego, California 92103

Collective members on February 16, 2024. [Dkt. No. 38.] Defendant admitted the existence of common policies applicable to the Class but alleged the policies are legal and do not result in the underpayment of any wages or the failure to reimburse for any expenses. [Dkt. No. 22.] These are common questions of law that are capable of class-wide resolution, and therefore, the commonality requirement of Fed. R. Civ. P. 23(a)(2) is met. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

### C.    All Class Representatives Are Typical and Adequately Represent the Classes

Plaintiffs' claims stem from the same course of conduct and pattern of alleged wrongdoing. The Class Members claim TLC did not properly compensate them for their travel time because they required them to clock-out before traveling, and that TLC did not pay for all overtime wages because TLC paid for what they considered "sleep time" at the California minimum wage rate and not at the applicable overtime rate of pay. Plaintiffs' claims are typical because they were subjected to the same conduct as the other Class Members and suffered the same injury as a result.

All Plaintiffs here were employed by TLC as Instructional Assistants during the Class period, and clearly belong to the Class they seek to represent. [Declaration of Genevieve Basham In Support of Plaintiffs' Motion for Preliminary Approval of Class and Collective Action Settlement ("Basham Decl."), ¶ 3; Declaration of Jennifer Raper In Support of Plaintiffs' Motion for Preliminary Approval of Class and Collective Action Settlement ("Raper Decl.") ¶ 3; Declaration of George Pepper In Support of Plaintiffs' Motion for Preliminary Approval of Class and Collective Action Settlement ("Pepper Decl."), ¶ 3.] Moreover, none of the Plaintiffs have any conflicts of interest with those of the Class. Plaintiffs and Class Counsel have demonstrated their commitment to vigorously prosecuting the case on behalf of the Class. [Cordero Decl. ¶¶ 147.] All Plaintiffs have spent significant amounts of time and made personal sacrifices to act as the named Plaintiffs in this case. [Basham Decl., ¶¶ 14-21; Raper Decl., ¶¶ 11-17; Pepper Decl., ¶¶ 14-18.] They have contributed extensively by attending in-person meetings, participating in multiple phone conferences, providing valuable factual information and documentation, partaking in written discovery, participating in long depositions, participating in two mediations, and undertaking necessary steps to protect the best interests of the class at all times. [*Id.*] Typicality

Graham**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

1  and adequacy of representation are similarly met. *Hanon v. Dataproducts Corp*., 976 F.2d 497,

2  508 (9th Cir. 1992).

3      **D.**    **Plaintiffs' Meet the Predominance and Superiority Rule 23(b)(3)**

4      **Requirements**

5      The predominance requirement "tests whether proposed classes are sufficiently cohesive

6  to warrant adjudication by representation." *Amchem*, 521 U.S. at 594 (1997). The common

7  questions in this case, as set forth above, predominate over any individual issues that might exist.

8  Moreover, the claims Plaintiffs assert for unpaid wages and statutory penalties are all brought

9  under the same legal theories that apply to the class as a whole. Where each class member bringing

10  an individual suit "would be required to prove the same wrongful conduct to establish liability

11  and thus would offer the same evidence, ... classwide resolution of their claims is clearly favored

12  over other means of adjudication." *Volkswagen*, 2017 WL 672820, at *8. The proposed Class here

13  meets the superiority requirement.

14  **V.**    **LEGAL STANDARD FOR PRELIMINARY APPROVAL OF A CLASS AND**

15  **COLLECTIVE ACTION SETTLEMENT**

16      Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a

17  certified class—or a class proposed to be certified for purposes of settlement—may be settled,

18  voluntarily dismissed, or compromised only with the court's approval." Judicial policy strongly

19  favors settlement, particularly in class actions and other complex litigation cases where

20  substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation.

21  *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992); *see also* Alba Conte &

22  Herbert Newberg, *Newberg on Class Actions* (4th ed. 2002) ("*Newberg*"), § 11.41. "To vindicate

23  the settlement of such serious claims, however, judges have the responsibility of ensuring fairness

24  to all members of the class ...." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) ("*Staton*").

25  The court's role in evaluating a proposed settlement is "limited to the extent necessary to reach a

26  reasoned judgment that the agreement is not the product of fraud or overreaching by, or

27  collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair,

28  reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1027 (9th

Graham**Hollis** APC
3555 Fifth Avenue Suite 200
San Diego, California 92103

Cir. 1998).

At the preliminary approval stage, courts consider whether the settlement: "(1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval." *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 319 (C.D. Cal. 2016) (internal quotation marks omitted). If a court determines that a proposed class action settlement deserves preliminary approval, then the court must direct notice of the action in a reasonable manner to the Class Members bound by the proposal. Fed. R. Civ. P. 23(e)(1)(B).

Similarly, in deciding whether to approve a proposed FLSA settlement, a district court must determine whether "(1) the case involves a bona fide dispute; (2) the proposed settlement agreement is fair and reasonable; and (3) the award of costs is reasonable." *Moreno v. Cap. Bldg. Maint. & Cleaning Servs., Inc.*, No. 19-CV-07087-DMR, 2021 WL 1788447, at *13 (N.D. Cal. May 5, 2021) ("*Moreno*"); *Estorga v. Santa Clara Valley Transportation Auth.*, No. 16-cv-02668-BLF, 2020 WL 7319356, at *3 (N.D. Cal. Dec. 11, 2020). These factors closely align with those under Rule 23, and courts often evaluate settlements using the same criteria. *Moreno*, 2021 WL 1788447, at *13.*

### A.    The Settlement is Fair, Adequate, and Reasonable

A court must make a preliminary determination as to whether a proposed settlement is fair, adequate, and reasonable pursuant to Federal Rule of Civil Procedure 23(e)(1)(C). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *Pilkington v. Cardinal Health, Inc.* (*In re Syncor ERISA Litig.*), 516 F.3d 1095, 1100 (9th Cir. 2008). Therefore, the court must ensure that "the procedure for reaching this settlement was fair and reasonable and that the settlement was the product of arms-length negotiations." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007). Factors relevant to this determination include:

> The strength of the Plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout

///

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Nunez v. BAE Sys. San Diego Ship Repair Inc.*, 292 F. Supp. 3d 1018, 1037 (S.D. Cal. 2017) (quoting *Hanlon*, 150 F.3d at 1026).

Likewise, the district court must assess the fairness and reasonableness of the FLSA Collective portion of the Settlement by considering factors such as: (1) the plaintiff's potential recovery; (2) the stage of proceedings and amount of discovery completed; (3) the litigation risks faced by the parties; (4) the scope of the release provision in the settlement; (5) the experience and views of counsel and participating plaintiffs; and (6) the possibility of fraud or collusion. *Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1333 (N.D. Cal. 2014) (Cousins, J.); *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1173 (S.D. Cal. 2016).

Here, each of these factors supports approval and ensures a just, fair settlement for unnamed Class and FLSA Members.

### a.    Strength of Plaintiffs' Case

In order to succeed on the merits at trial, Plaintiffs would need to prove that Defendant (1) failed to fully compensate Class Members for travel time, (2) undercompensated overtime due to miscalculated sleep time, (3) maintained a biased rounding policy to Class Members' detriment, and (4) knowingly failed to maintain accurate records and wage statements which injured Class Members. With respect to Plaintiffs' PAGA claims, Plaintiffs would need to establish (1) liability under the Labor Code; (2) that civil penalties can be imposed pursuant to the Labor Code.; and (3) Defendant had sufficient notice of the violations to justify penalties for "subsequent" violations. Additionally, Plaintiffs would have to maintain certification for the FLSA Collective, which requires meeting a higher standard than conditional certification.

Defendant maintains that it complied with the Labor Code and provided accurate records and wage statements. [Cordero Decl. ¶¶42-46] Additionally, Defendant asserts that Plaintiffs could not certify its claims under the stringent Rule 23 requirements and maintain its certification for the Collective. [*Id.* at ¶¶ 42-46; 79-81.] Specifically, Defendant contends that it enforced valid

sleep time agreements the overnight overtime claims hinge on the sleeping conditions which differed depending on the client serviced. [*Id.*] Thus, while Plaintiffs maintains that their claims have merit, Plaintiffs recognize that their claims are met with these plausible defenses. [*Id.* at ¶¶ 88-90] Plaintiffs acknowledge they face a significant battle in proving liability and justifying penalties and unpaid wages. [*Id.* at ¶¶ 82-90.]

The Settlement is the result of arm's-length negotiations conducted over the course of nearly three years, including each party's discovery and investigation of the potential value and exposure in the case, fully briefing a conditional class certification motion, and two mediations with experienced mediators who have extensive experience in employment matters such as this one. [*Id.* at ¶¶ 18-35; 48-62.]

### b. Risk, Expense, Complexity, and Likely Duration of Further Litigation

Given the hotly contested nature of Plaintiffs' claims and Defendant's plausible defenses, there is a likelihood that continued litigation would carry with significant risks and expenses and be very lengthy in duration. [Cordero Decl. ¶¶ 83-90.] Absent the Settlement, the parties would likely engage in a significant amount of motion practice, including motions to compel, motions to certify the class, motions to decertify the class, and cross motions for summary judgment, among others. [*Id.*] The Settlement is a fair and reasonable compromise by both parties which avoids these risks, as well as the accompanying expenses associated therewith, and instead provides immediate and substantial monetary relief to Plaintiffs and the Class Members by committing Defendant to create the Settlement Fund. [*Id.* at ¶¶ 91-93.] These factors all demonstrate the significant risk, expense, complexity, and duration of continued litigation absent the Settlement, and therefore weigh in favor of the Settlement as being fair, adequate, and reasonable.

### c. Amount Offered in Settlement

The Settlement Amount falls within the range of possible approval where "Plaintiffs' expected recovery balanced against the value of the settlement offer" is fair and adequate. *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080. Moreover, a settlement "may be acceptable even though it amounts only to a fraction of the potential recovery that might be available to class

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

members at trial." *Uschold v. NSMG Shared Servs., LLC*, 333 F.R.D. 157, 171 (N.D. Cal. 2019) (internal quotation marks omitted); also see *Officers for Justice v. Civil Service Commission*, 688 F.2d 615, 628 (9th Cir. 1982) ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair.")

This Settlement provides significant monetary value to the Class and FLSA Collective Members. While the Settlement results in a significant discount on Plaintiffs' total damages estimate of approximately $3,730,558 of maximum exposure to Defendant, this reduction represents an extremely reasonable compromise considering Defendant's viable defenses and the substantial risks Plaintiffs would face establishing liability on all claims. [Cordero Decl., ¶¶ 63-69; 74-77.] The reasonableness of the proposed Settlement is underscored by the fact that Defendant has potentially viable grounds for not only challenging its liability, but also as to Plaintiffs' estimate of the potential value of each claim and Plaintiffs' ability to acquire and maintain class certification. [Cordero Decl. ¶¶ 42-47.]

Here, assuming preliminary approval is granted, 70% of the Net Settlement Fund[1], currently estimated to be approximately $186,666.67[2], will be allocated to the California law Class claims, and distributed to the Class based on the number of qualifying workweeks worked in the California Settlement Class Period. [*Id*. at ¶ 117.] If each of the estimated 450 Class Members participates, the average recovery per class member is estimated to be approximately $2.62 per workweek, plus an additional amount of $231.00 for the Waiting Time Penalties subclass members. [*Id*. at ¶¶ 118-121.]

Similarly, the remaining 30% of the Net Settlement Fund will be distributed to the FLSA Collective based on the number of weeks worked from December 1, 2020 until final approval. [*Id*. at ¶122.] This an excellent result for the Class and FLSA Collective, providing substantial sums which adequately recognize wages and penalties owed to Plaintiffs, the Class, and FLSA Collective Members, and compensates them appropriately, and places the Settlement well-within

///

[1] 70% of the Net Settlement incorporates the allocation of 40% of the Net Settlement to the Class Members and 30% for the Waiting Time Penalties Subclass.
[2] The Net Settlement is estimated at $266,66.67.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

the range of reasonableness for settlement approval. Moreover, Class and Collective Members will be able to receive their payments soon after Final Approval is granted rather than having to wait through years of uncertain litigation.

### d. Extent of Discovery Completed and the State of the Proceedings

Plaintiffs sought extensive information from Defendant during the course of litigating this case, resulting in the production of thousands of documents, time and payroll records, and wage statements. [Cordero Decl., ¶¶ 48-57.] Through this exchange of information, Class Counsel was able to thoroughly analyze Plaintiffs' claims and Defendant's defenses, and prepare a detailed analysis of  the maximum liability exposure for Defendant if Plaintiffs succeeded at trial. [*Id.* at ¶¶ 64-77.] The parties have therefore entered into this Settlement with a strong working knowledge of the relevant facts and law, as well as the strengths and weaknesses of their claims and defenses. This factor therefore weighs in favor of the Settlement as being fair, adequate, and reasonable.

### e. Experience and Views of Counsel

Where a settlement is the product of arm's-length negotiations conducted by capable and experienced counsel, a court begins its analysis with a presumption that the settlement is fair and reasonable. *Garner v. State Farm Mut. Auto Ins. Co.*, No. CV081365CW (EMC), 2010 WL 1687832, at *13 (N.D. Cal. Apr. 22, 2010) (quoting *Brown v. Hain Celestial Grp., Inc.*, No. 3:11-CV-03082-LB, 2016 WL 631880, at *5 (N.D. Cal. Feb. 17, 2016)). The recommendations of Plaintiffs' counsel should also be given a presumption of reasonableness. *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979). Here, Class Counsel have extensive experience in complex California wage and hour litigation. [Cordero Decl., ¶¶ 7-11; Ex. 3 to Cordero Decl.] This Settlement is the result of arm's-length negotiations, between experienced counsel representing  the interests of the Plaintiffs and Defendant. [Cordero Decl. at ¶¶ 78- 96.] Class Counsel recommends the Settlement, and the Settlement was reached only after the parties spent significant time and resources  investigating the merits of  Plaintiffs'  claims and Defendant's defenses thereto. This factor therefore weighs in favor of approval of the Settlement.

### f. Presence of a Government Participant

Where settlements "negotiate[] a good faith amount" for PAGA penalties and "there is no

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

indication that this amount was the result of self-interest at the expense of other Class Members," such amounts are generally considered reasonable. *Hopson v. Hanesbrands Inc.*, No. CV-08-0844 EDL, 2009 WL 928133, at *9 (N.D. Cal. Apr. 3, 2009). Here, Plaintiffs brought claims under the PAGA, and will share civil penalties of $15,000 with the State of California. This factor therefore weighs in favor of approval. *See, e.g.*, *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012) (weighing PAGA penalties in favor of settlement approval); *McKenzie v. Fed. Exp. Corp.*, No. CV 10-02420 GAF PLAX, 2012 WL 2930201, at *6 (C.D. Cal. July 2, 2012) ("California's LWDA is a government entity affected by this action.").

### B.     The Settlement Has No Obvious Deficiencies

A court should consider possible deficiencies in a settlement including, for example, (i) issues surrounding the release of claims, (ii) the notice plan, (iii) the plan of allocation, (iv) the *cy pres* designee, and (v) a request for attorneys' fees. *See Custom LED, LLC v. eBay, Inc.*, 2013 WL 6114379, 7-8 (N.D. Cal. Nov. 20, 2013). The notice plan is consistent with class notices approved by state and federal courts in other cases, and the allocation fairly distributes the Net Settlement Fund on a pro rata basis. Additionally, the *cy pres* designee is a program which supports projects that will benefit interests similar to those of the Class Members.

Releases in class settlements should be approved when claims released by unnamed class members are limited to those related to the conduct alleged in the complaint. *Cotter v. Lyft, Inc.,* 193 F. Supp. 3d 1030, 1038 (N.D. Cal. 2016); *see also Hesse v. Sprint Corp*., 598 F.3d 581, 590 (9th Cir. 2010) (quoting *Williams v. Boeing Co*., 517 F.3d 1120, 1133 (9th Cir. 2008) (release of claims is non-collusive and acceptable when the released claim is "based on the identical factual predicate as that underlying the claims in the settled class action.") The scope of the California Claims Release follows the above parameters, as it is limited to wage statement related claims reasonably related to the factual allegations asserted in Plaintiffs' operative complaint. [SA, § 13.3.]

For FLSA releases, the courts assess whether the scope of the release is appropriately tied to the facts of the case and whether it includes or excludes certain claims appropriately. The release provisions must be narrowly tailored to the facts set forth in the operative complaint. *Nunez*

Graham**Hollis** APC
3555 Fifth Avenue Suite 200
San Diego, California 92103

*v. BAE Systems San Diego Ship Repair Inc.*, 292 F. Supp. 3d 1018 (S.D. Cal. 2017) (finding that the release was not overbroad as it was limited to the claims that could have been alleged based on the facts set forth in the operative complaint). It is important for the notice to clearly outline the options available to class members regarding the release of claims. *Millan v. Cascade Water Services, Inc.*, 310 F.R.D. 593 (E.D. Cal. 2015). Here, the parties have drafted the FLSA Claims Release specifically tailored to the FLSA claims that were alleged or could have been alleged in the complaints. [Cordero Decl., ¶¶ 124-126.] Moreover, the FLSA Claims Release only covers FLSA Collective Members who either submit a Consent to Join form or who cash the FLSA Check. [*Id.*] Therefore, the release of the FLSA claims is fair and reasonable.

1.    **The Class Representative Service Award and Attorney's Fees Provisions Are Reasonable**

a.    **Courts Regularly Grant Class Representative Service Awards to Class Representatives**

Courts routinely approve Class Representative Service Awards to compensate named Plaintiffs for the services they provide and the risks they incur during the course of the class litigation. *Ingram v. The Coca- Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (quoting *In re S. Ohio Corr. Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997)); *Bell v. Farmers Ins. Exch.*, 115 Cal. App. 4th 715, 726 (2004) (upholding "service payments" to named Plaintiffs for their efforts in bringing class case); *Pelletz v. Weyerhaeuser Co.*, 592 F. Supp. 2d 1322, 1329 (W.D. Wash. 2009) (noting that such awards "may be merited for time spent meeting with class members, monitoring cases, or responding to discovery") (internal citations omitted). Federal courts recognize that "a class representative is entitled to some compensation for the expense he or she incurred on behalf of the class." *In re Oracle Secs. Litig.*, No. 90–0931, 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994) (*citing In re Continental Ill. Secs. Litig.*, 962 F.2d 566, 571 (7th Cir. 1992)). "Such payments, however, must be reasonable in light of applicable circumstances, and not 'unfair' to other class members." *Smith v. Tower Loan of Miss., Inc.*, 216 F.R.D. 338, 368 (S.D. Miss. 2003) (citation omitted). Reasonableness is assessed through "relevant factors includ[ing] the actions the Plaintiffs has taken to protect the interests of the class, the degree to

Graham**Hollis** APC
3555 Fifth Avenue Suite 200
San Diego, California 92103

which the class has benefited from those actions, . . .[and] the amount of time and effort the Plaintiffs expended in pursuing the litigation ….” *Staton*, 327 F.3d at 977 (alterations and ellipses in original) (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

Here, Plaintiffs request a Class Representative Service Award of $10,000.00 each. Plaintiffs assisted counsel with the investigation of the claims, assisted counsel with preparation of the complaints, provided relevant documents, and worked with Class Counsel throughout the case. [Basham Decl., ¶¶ 14-21; Raper Decl., ¶¶ 11-17; Pepper Decl., ¶¶ 14-18.] Plaintiffs also sat for their depositions. [Basham Decl., at ¶ 22, Raper Decl., at ¶ 18; Pepper Decl., at ¶ 19.] Plaintiffs’ participation and input were crucial in the prosecution of this litigation. [Cordero Decl., ¶¶ 148-150.] Plaintiffs spent significant hours discussing with Class Counsel the facts related to their employment with Defendant. [Basham Decl., at ¶¶ 15-16, Raper Decl., at ¶¶ 13-14; Pepper Decl., at ¶¶ 17-18.] Plaintiffs Raper and Pepper estimate that they spent approximately eighty (80) hours and Plaintiff Basham spent approximately 162 hours each working with Class Counsel in this litigation, including answering questions from counsel, looking for and providing documents, being deposed, and reviewing the Settlement documents. [Basham Decl., at ¶¶ 15-29, Raper Decl., at ¶¶ 13-24; Pepper Decl., at ¶¶ 17-25.] This case could not have continued without Plaintiffs’ efforts and desire to obtain this positive result for the Class. [Cordero Decl., ¶¶ 148-149.]

Plaintiffs’ participation was an essential element which allowed Class Counsel to reach this Settlement. [*Id*.] Other Class Members may not have taken any action individually, and they would not have received the compensation afforded by this Settlement but for Plaintiffs’ contributions. Furthermore, under the terms of the Settlement, Plaintiffs will execute a general release of their claims, which is an expansive release that is not required of the other Class Members who will only execute a limited release of their claims, thus further justifying the granting of the Class Representative Service Award. [*Id*.]

### b.    The Significant Amount of Work Performed by Class Counsel Supports the Request for Attorney’s Fees and Costs

In California, “when a number of persons are entitled in common to a specific fund, and an action brought by a Plaintiff or Plaintiffs for the benefit of all results in the creation or

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS’ MOTION FOR
PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT

preservation of that fund, such Plaintiff or Plaintiffs may be awarded attorneys' fees out of the fund." *Serrano v. Priest*, 20 Cal. 3d 25, 34 (1977). The overwhelming majority of federal and state courts hold that when class action litigation establishes a monetary fund for the benefit of the class members, the Court may determine the amount of a reasonable fee based on an appropriate percentage of the fund created. This was recently explained, for example, by the California Supreme Court in *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 503 (2016).

Courts in the Ninth Circuit regularly award attorney's fees of one-third of the total class settlement value. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 460 (9th Cir. 2000) (affirming award of fees equal to one-third of total recovery); *Rippee v. Boston Market Corporation*, 2006 WL 8455400, at *1 (S.D. Cal. Oct. 10, 2006) (awarding 40% in attorneys' fees); *Hose v. Washington Inventory Service, Inc.*, 2020 WL 3606404, at *1 (S.D. Cal. Jul. 5, 2020) (approving 33% in attorneys' fees); *Clarke v. Insight Global, Inc.*, 2015 WL 13828417, at *7 (S.D. Cal. Jan. 5, 2015) (approving Plaintiffs' request for 33% of a common fund settlement as reasonable); *Ettedgui v. WB Studio Enterprises Inc.*, No. 2:20-cv-08053-MCS-JDE, 2020 WL 11421803 at *8 (E.D. Cal. 2022) (one-third attorney fee is permissible upon proof that the lodestar exceeds the requested fee award); *Collier v. Delaware N. Companies Travel Hosp. Servs., Inc.*, No. EDCV 17-1938-R, 2018 WL 9457989, at *1 (C.D. Cal. Sept. 18, 2018) (noting California courts routinely award attorneys' fees equaling or exceeding one-third).

Class Counsel seeks an award of one-third (1/3) of the Gross Settlement Amount (or approximately $193,333.34) as payment for attorney's fees in connection with the prosecution of this action.[3] [SA, at ¶ 4.4.] Class Counsel also seeks reimbursement of the actual costs and expenses incurred, in an amount not to exceed $35,000. [SA, § 4.5.] Class Counsel has performed a significant amount of work to date, including conducting extensive research, investigation, and analysis into each potential cause of action. [Cordero Decl., ¶¶ 151-154.] To date, Class Counsel's lodestar exceeds $595,000, and Class Counsel will continue to devote time and effort to this

///

///

---

[3] Class Counsel's request for attorney's fees and costs will be briefed more fully prior to final approval.

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

litigation. [*Id.* at ¶154.] Class Counsel is highly experienced in wage and hour matters and class action cases, and has been appointed class counsel in numerous employment class and representative action cases. [Ex. 3 to Cordero Decl.] Additionally, Class Counsel has committed and continues to commit significant financial and staffing resources to the representation of the Class Members and had to divert many of its resources to effectively pursue this action. [Cordero Decl., at ¶¶ 74-77; 151-154.]

Accordingly, for purposes of this Motion, the requested fee amount falls well within the range of reasonableness. *See e.g., Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 297 (N.D. Cal. 1995) (noting class counsel fee awards of 30-50% are more typical where the common fund is less than $10 million).

## VI. THE PROPOSED NOTICE IS FAIR AND ADEQUATE

A court must provide class members with the best notice practicable under the circumstances. See *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974); *Silber v. Mabon*, 18 F.3d 1449, 1453–54 (9th Cir. 1994). "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (internal quotation marks omitted). The court's main concern is to ensure that the Class and FLSA Collective members are informed of the allegations, claims, settlement terms, and the rights and options available to the members, including how to participate in or opt out of the settlement, and how to object to the settlement. *Uschold v. NSMG Shared Services, LLC*, 333 F.R.D. 157 (2019); *Ontiveros v. Zamora*, 303 F.R.D. 356 (2014).

Here, the proposed Class Notice satisfies the above-described requirements because it informs Class and FLSA Collective Members in plain language about the terms of the Settlement, and it identifies the Class and FLSA Collective Member's estimated Settlement Award. [Cordero Decl., ¶¶ 140-144; Class Notice, Ex. A to SA, attached as Ex. 1 to Cordero Decl.] The notice plan proposes first-class mailed notice to all Class and FLSA Collective Members, as well as in-depth skip tracing on Class Notices returned without a forwarding address, is consistent with class

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT

notices approved by state and federal courts. [SA §§8.2-8.3] The Class Notice summarizes the lawsuit, including the contentions and denials of the parties, and the proceedings to date. [Cordero Decl., ¶142.] The Class Notice fully informs Class and FLSA Collective Members of the Settlement's effect on their rights, of their options as Class Members (i.e., to object, opt out, and/or do nothing), the consequences of exercising those options, and the procedures and deadlines for doing so. [*Id.* at ¶ 143-144; SA § 8.7.] The Class Notice clearly states all amounts to be paid from the Gross Settlement Amount; states the date, time, and place of the Final Approval hearing; and explains how Class and FLSA Collective Member can obtain additional information. [*Id.*] Furthermore, the Class Notice makes it clear that the Settlement does not constitute an admission of liability by Defendant, that the Court has not ruled on the merits of the action, and that the final settlement approval decision has yet to be made. [Cordero Decl. ¶ 144; Class Notice, Ex. A to SA]

Furthermore, the Class Notice further explains the opt-in process and all legal rights and remedies for electing into the FLSA Collective, including eligibility, how to opt-in, the scope of the claims, the scope of the FLSA Claims Release, and the distribution and redistribution plan for the FLSA Checks. [*Id.* ] Additionally, the Class Notice and plan ensures that an in-depth skip will be conducted for all returned FLSA Settlement Checks. [SA §8.8; §11.2.]

Finally, and as stated before, Class counsel, with the help of the Settlement Administrator, has already secured a static website where Class Members can read and download any important documents and notices related to this Action.

///
///
///
///
///
///
///
///

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT

## VII.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully requests that this Court enters the concurrently filed [Proposed] Order Granting Preliminary Approval of the Settlement Agreement, and Approval of the Class Notice and Notice Plan.

Respectfully submitted,

Dated: November 15, 2024                          GRAHAM**HOLLIS** APC


By:  _/s/ Vilmarie Cordero_
        VILMARIE CORDERO
        TAYLOR M. GEE
        Attorneys for Plaintiffs Genevieve Basham,
        Jennifer Raper, and George Pepper.