GRAHAM**HOLLIS** APC
Vilmarie Cordero (SBN 268860)
vcordero@grahamhollis.com
3555 Fifth Avenue Suite 200
San Diego, California 92103
Telephone: 619.692.0800
Facsimile:  619.692.0822

Attorney for Plaintiffs Genevieve Basham,
Jennifer Raper, George Pepper, and aggrieved
employees.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA - OAKLAND DIVISION

| | |
|---|---|
| GENEVIEVE BASHAM, JENNIFER RAPER and GEORGE PEPPER, individually and on behalf of all current and former similarly situated employees and/or all aggrieved employees of Defendants in the State of California,<br><br>Plaintiffs,<br><br>v.<br><br>TAILORED LIVING CHOICES, LLC, and DOES 1 THROUGH 50, inclusive,<br><br>Defendants. | Case No.: 4:23-cv-02678-DMR<br><br>**CLASS & REPRESENTATIVE ACTION**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**<br><br>Date:      October 9, 2025<br>Time:      1:00 p.m.<br>Judge:     Hon. Donna M. Ryu<br>Crtrm:    4, 3rd Floor<br><br>Complaint Filed: December 29, 2021<br>Removal Date: May 30, 2023<br>Trial Date: May 5, 2025 |

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................... 1

II.   BRIEF PROCEDURAL BACKGROUND ............................................................. 2

    A.   The Pleadings and FLSA Conditional Certification ...................................... 2

    B.   FLSA Conditional Certification ..................................................................... 2

    C.   Settlement Negotiation and Preliminary Approval of the Settlement ........... 3

    D.   The Notice Procedure Was Properly Carried Out .......................................... 4

III.  FINAL SETTLEMENT APPROVAL SHOULD BE GRANTED .......................... 6

    A.   Legal Standards for Settlement Approval ...................................................... 6

    B.   The *Hanlon* Factors Weigh in Favor of Granting Final Approval ................ 7

        1.   The Risk, Expense, Complexity, and Likely Duration of further litigation ............................................................................................... 7

        2.   The Amount Offered in Settlement ..................................................... 9

        3.   The Extent of Discovery Completed and the State of the Proceedings ........................................................................................ 10

        4.   The Experience and Views of Class Counsel ..................................... 11

        5.   The Reaction of the Class Members to the Proposed Settlement ....... 11

        6.   Arm's Length Negotiations ................................................................. 11

        7.   Intra-Class Equity .............................................................................. 12

    C.   The Proposed *Cy Pres* Beneficiary is Reasonable ....................................... 12

    D.   The Court Should Approve the Payment of PAGA Penalties to the LWDA ......................................................................................................... 13

    E.   The Court Should Approve the Settlement Administrator's Fees and Costs ............................................................................................................. 13

    G.   Plaintiffs' Request for Attorney's Fees and Reimbursement of Litigation Costs is Reasonable ..................................................................... 16

IV.   CONCLUSION ................................................................................................... 17

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Amchem Prods., Inc. v. Windsor*,

521 U.S. 591 (1997)....................................................................................7

In re *AT&T Mobility Wireless Data Servs.*,

Sales Litig., 270 F.R.D. 330 (2010)................................................................6

*Calhoun, et al. v. Celadon Trucking Services, Inc*.,

No. 5:16-cv-01351-PSG-FFM, 2017 WL 11631978 (C.D. Cal. Nov. 13,

2017) ........................................................................................................13

*Carter v. Anderson Merchs.*,

LP, Nos. EDCV 08-0025-VAP (OPx), EDCV 09- 0216-VAP (OPx),

2010 WL 1946757, (C.D. Cal. May 11, 2010);.............................................14

*Chu v. Wells Fargo Invs. LLC*,

Nos. C 05-4526 MHP, C 06-7924 MHP, 2011 WL 672645 (N.D. Cal.

Feb. 16, 2011) ...........................................................................................13

*Churchill Village, LLC v. Gen. Elec.*,

361 F.3d 566 (9th Cir. 204) ........................................................................6

*Evans v. Linden Research, Inc.*,

No. C-11-01078 DMR, 2013 WL 5781284 (N.D. Cal. Oct. 25, 2013).......................14

*Garcia v. Gordon Trucking, Inc*.,

No. 1:10-CV-0324 AWI, SKO, 2012 WL 5364575 (E.D. Cal. Oct. 31,

2012) ........................................................................................................13

*Hanlon v. Chrysler Corp.*,

150 F.3d 1011 (9th Cir. 1998) ..............................................................6, 7

*Hopson v. Hanesbrands Inc.*,

No. CV-08-0844 EDL, 2009 WL 928133 (N.D. Cal. Apr. 3, 2009)..........................13

///

TABLE OF AUTHORITIES

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

*Ingram v. The Coca-Cola Co.*,

   200 F.R.D. 685 (N.D. Ga. 2001) ................................................................14

*Khait v. Whirlpool Corp.*,

   No. 06-6381 (ALC), 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010)...........................7

*Lewis v. Vision Value, LLC*,

   No. 1:11-cv-01055-LJO-BAM, 2012 WL 2930867 (E.D. Cal. July 18,

   2012) ..............................................................................................................7

*Linney v. Cellular Alaska P'ship*,

   151 F.3d 1234 (9th Cir. 1998) ...................................................................10

*McElmurry v. U.S. Bank. Nat. Ass'n*,

   495 F.3d 1136 (9th Cir. 2007) .....................................................................7

*Nunez v. BAE Sys. San Diego Ship Repair Inc.*,

   292 F. Supp. 3d 1018 (S.D. Cal. 2017).......................................................11

*Pelletz v. Weyerhaeuser Co.*,

   592 F. Supp. 2d 1322 (W.D. Wash. 2009) .................................................14

In re *S. Ohio Corr. Facility*,

   175 F.R.D. 270 (S.D. Ohio 1997)...............................................................14

*Staton v. Boeing Co.*,

   327 F.3d 938 (9th Cir. 2003) ........................................................................6

*Torrisi v. Tucson Elec. Power Co.*,

   8 F.3d 1370 (9th Cir. 1993) ..........................................................................6

*Van Vranken v. Atl. Richfield Co.*,

   901 F. Supp. 294 (N.D. Cal. 1995)......................................................14, 16

*Williams v. Costco Wholesale Corp.*,

   No. 02cv2003 IEG (AJB), 2010 WL 2721452 (S.D. Cal. July 7, 2010)..............10, 11

*Yue Zhou v. Wang's Rest.*,

   No. C 05-0279, 2007 WL 2298046 (N.D. Cal. Aug. 8, 2007) ......................7

///

TABLE OF AUTHORITIES

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

**State Cases**

*Bell v. Farmers Ins. Exch.*,

    115 Cal. App. 4th 715 (2004) ....................................................................14

*Nordstrom Comm'n Cases*,

    186 Cal. App. 4th 576, 589 (2010) ...........................................................13

**Federal Statutes**

Fair Labor Standards Act (FLSA).........................................................................*passim*

**State Statutes**

California Labor Code § 203 ....................................................................................12

**Rules**

Federal Rule of Civil Procedure 23(e) .....................................................................7

Federal Rule of Civil Procedure 23(e)(1)(C) ...........................................................6

**Other Authorities**

*Manual for Complex Litigation* (Fourth) § 21.61, at 480 ...............................6, 14

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

4:23-cv-02678-DMR
TABLE OF AUTHORITIES

# I.    <u>INTRODUCTION</u>

The Court preliminarily approved the terms of the proposed $580,000.00 Class, Collective, and PAGA Action Settlement ("Settlement") on May 15, 2025. [Dkt. 62.] The Court further approved, on a preliminary basis, the payment of an incentive award to Plaintiffs Genevieve Basham, Jennifer Raper, and George Pepper ("Plaintiffs") and Class Representatives of $10,000.00 to each one of them, an award of attorney's fees of up to one-third of the total Settlement, reimbursement of litigation costs reasonably incurred by class counsel, the payment of administration expenses incurred by the Settlement Administrator, and the payment of PAGA penalties of $20,000.00, seventy-five percent (75%) of which will be paid to the Labor and Workforce Development Agency ("LWDA") and twenty-five percent (25%) will be distributed to the aggrieved employees. The Court's Preliminary Approval Order found that the proposed Settlement was fair and adequate. [Dkt. 62.]

The notice procedures ordered by the Court on May 15, 2025 have been properly carried out, and the results of those procedures indicate that there is no opposition to the Settlement from within or outside the class, and that class members overwhelmingly wish to participate in the Settlement. Declaration of Vilmarie Cordero in Support of Plaintiff's Motion for Final Approval of Settlement ("Cordero MFA Decl.") ¶ 14-23.

The proposed Settlement is both fair and reasonable after considering Defendant Tailored Living Choices, LLC's ("Defendant" or "TLC") available legal and factual grounds for defending against the asserted minimum, overtime, and wage statement claims. Plaintiffs' and Defendant's counsel are extremely experienced in wage and hour class action litigation, and agree the Settlement reached by the parties is fair, reasonable, and adequate. The material and substantial risks of maintaining class action status through trial, the complexity of the case, the novelty of the issues, the amount of time already spent by the parties in formal and informal discovery, investigation, depositions, mediation, post-mediation negotiations, motion practice, and experts when compared to the significant monetary benefits already provided for the class members in the Settlement, further support

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

the adequacy and reasonableness of the Settlement, and thus Final Approval. Therefore, Plaintiffs respectfully request this Court grant final approval of this Settlement.

## II.  BRIEF PROCEDURAL BACKGROUND

### A.  The Pleadings and FLSA Conditional Certification

Plaintiffs filed the original Complaint on December 29, 2021, in the Superior Court for the State of California, County of Napa, alleging individual, class, and PAGA claims under California law on behalf of all other similarly situated non-exempt employees working for TLC as Instructional Assistants at any time from June 29, 2017 to the present (the "Class"). [Dkt. 1–2, Exs. 1-3, at pp. 4–57.] Among others, Plaintiffs claim Defendant failed to (1) provide meal periods, (2) provide rest periods, (3) pay minimum and regular wages, (4) pay overtime wages, (5) indemnify for all incurred and necessary business expenses, (6) provide accurate itemized wage statements, and (7) comply with California's unfair competition laws.

Plaintiffs also allege a PAGA representative action on behalf of all Instructional Assistants that worked for TLC at any time from October 25, 2020, to the present (the "PAGA Employees"), based on the same facts and Labor Code violations alleged in the Complaint. On April 27, 2023, Plaintiffs filed a First Amended Complaint adding causes of actions under California law for inaccurate records, untimely payment of wages upon separation of employment, and adding two new causes of action for failure to pay minimum and overtime wages under the FLSA. [Dkt. Nos. 1–2; Ex. 21 at pp. 323–370.] On May 30, 2023, Defendant removed the action to this Court. [Dkt. 1.] Thereafter, Plaintiffs amended their Complaint to eliminate the claims for overtime wages under the California Labor Code. [Dkt. 19.] On November 30, 2023, Plaintiffs filed their Third Amended Complaint to add George Pepper as an additional named Plaintiff and Class Representative. [Dkt. 25.]

### B. FLSA Conditional Certification

The parties engaged in substantive formal discovery. [Dkt. 54-2, Declaration of Vilmarie Cordero in Support of Preliminary Approval ("Cordero MPA Decl."), ¶¶ 51-55.] On October 20, 2023, Plaintiffs Basham and Raper filed their Motion for Conditional Class

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

Certification, seeking certification of the "FLSA Collective," the "Minimum Wage Subclass," and the "Overtime Subclass." [Dkt. 20, Dkt. 34.] Defendant strongly opposed Plaintiffs' Motion for Conditional Class Certification. [Dkt. 22.] Defendant disputed the merits of Plaintiffs' FLSA claims, strongly arguing that its hourly rates of pay for overnight shifts and exclusion of overnight hours were lawful. [Dkt. 22, Defendant's Opposition to Plaintiffs' Motion for Conditional Certification ("Opp'n") at pp. 15-19.] In support of its Opposition, Defendant submitted the Declaration of Arnab Chakrabarti, [Dkt. 22-2.], and copies of the different company policies relating to the payment of overtime for the Live-In employees. [Dkt. 22-2, pp. 8-10.] On February 16, 2024, and after hearing oral argument, this Court issued an Order granting Conditional Certification of the FLSA Collective. [Dkt. 38.] Specifically, the Court conditionally certified the following FLSA Collective:

> "All current and former non-exempt employees who worked for Tailored Living Choices, LLC in the State of California in the position of Instructional Assistant at any time from December 1, 2020 through the present."

[Dkt. 38, at p. 13.] The parties met and conferred about the notice to the FLSA Collective members and submitted a Joint Statement re Amended Notice and Consent to Join Form. [Dkt. 39.] On March 5, 2024, this Court issued an Order relating to the Third-Party Administration of the Notice. [Dkt. 47.] Thereafter, the parties, through the Court-approved Third-Party Administrator—CPT Group, Inc.—disseminated the Court-approved FLSA Consent to Join Form. [Dkt. 54-2, Cordero MPA Decl. ¶30.] The Third-Party Administrator sent the FLSA Consent to Sue Form, as ordered by the Court, and a total of seventy-eight (78) FLSA Collective Members returned valid signed Consent to Join Forms. [*Id.* at ¶¶ 30-31; Ex. 4-5 Cordero MPA Decl.]

**C. Settlement Negotiation and Preliminary Approval of the Settlement**

The parties made a good faith effort to conduct a meaningful mediation on May 28, 2024, with the experienced mediator Daniel Turner. [*Id.* at ¶ 33.] The parties did not reach a settlement but agreed to continue mediation efforts. On June 7, 2024, the parties agreed,

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

on principle, to settle the Action and promptly gave notice to this Court. [Dkt. 48.]

Plaintiffs filed their Motion for Preliminary Approval on November 15, 2024. [Dkt. No. 54.] The Court requested supplemental briefing and revisions to the Class Notice. [Dkt. 59.] Plaintiffs submitted a revised Class Notice on April 28, 2025 [Dkt. 61.] and the Settlement was preliminarily approved on May 15, 2025. [Dkt. 62.]

Since the Court granted preliminary approval of the settlement, the parties have been working cooperatively and diligently to ensure that the Settlement Notice and FLSA Opt-In procedures have been accurately implemented by the Settlement Administrator. Cordero MFA Decl. ¶ 6-18; see also Declaration of Kaylie O'Connor on behalf of CPT Group, Inc. ("O'Connor Decl."), ¶¶3-10.

**D. The Notice Procedure Was Properly Carried Out**

The Settlement Administrator, CPT Group, Inc. ("CPT") mailed the Notice Packets to all 470 class members on July 24, 2025. O'Connor Decl. ¶ 4. On that same date, CPT posted a copy of the class notice, opt-in form, the Order Granting Preliminary Approval, and a copy of the Settlement. and other important information in the class action website https://www.tailoredlivingsettlement.com/Documents, to which all class members and the general public have access free of charge. [Dkt. 69-2, ¶13]

Prior to the mailing of the notice to the class members, CPT ran an skip trace as well as performed a basic search on the National Change of Address Database to attempt to obtain the best possible address for the class members before CPT mailed the notices. O'Connor Decl. ¶ 4. The class notice advised class members and the subclass they were qualified for, and that they could submit an exclusion, objection, and/or dispute. Ex. A to O'Connor Decl. The class notice also advised eligible class members that they could submit an opt in form to participate in the FLSA collective action. (*Id*.) The amount requested in attorney's fees and the estimated amount of litigation costs incurred to date were specifically included in the class notice mailed out by the Settlement Administrator to the class members. (Id.)

Plaintiffs' Unopposed Motion for an Award of Attorney's Fees and Costs was filed

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

on August 19, 2025 [Dkt. 69], and it was uploaded to the Settlement's website the next day. Cordero MFA Decl. ¶ 17-18. Plaintiffs' Motion for an Award of Attorney's Fees and Costs is currently available at no cost for the class members to review at any time[1]. *Id.* Thus, class members had the opportunity to review Plaintiffs' Unopposed Motion for Attorney's Fees and Costs prior to September 8, 2025—the close of the exclusion and objection period.

Class Counsel negotiated for the Settlement Administrator to conduct a skip trace prior to the mailing of the class notice and an additional second in-depth skip trace for the class notices that were returned without a forwarding address. [Dkt. 69-2 ¶ 26] As a result of class counsel's negotiated skip traces in the Settlement, CPT has accomplished to date the mailing of 464 of the 470 class notices that were mailed to the class. O'Connor Decl. ¶ 5. To date, only 6 of the 470 notices mailed have been returned as undeliverable. Therefore, to date, approximately 98 percent of the class has received the notice packet. Cordero MFA Decl. ¶15-16.

The Settlement has been extremely well received by the class, as evidenced by lack of objections, and zero requests for exclusion. O'Connor Decl. ¶¶ 6-8. This means 100% of the Class Members have decided to participate in the Settlement after reviewing their Class Notice. *Id.*; see also Cordero MFA Decl. ¶¶ 20-23. The notice contains class counsel's direct phone number. Class counsel has spoken with many class members who were interested in obtaining more information about the Settlement and has not received any objection to the Settlement or any objections to the Settlement amounts. Cordero MFA Decl. ¶ 19. Class counsel, CPT, and defense counsel worked together to calculate the estimated Settlement amount for each of the class members, and those amounts were clearly indicated in the notice sent to them. *Id.* ¶ 20. This took significant time and effort on the part of the Settlement Administrator, but it is of great assistance to the class members, who have had an opportunity to consider their anticipated individual settlement

///

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

[1] See https://www.tailoredlivingsettlement.com/Content/Docs/MotionForAttorneysFeesAndCosts.pdf.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT

amount before deciding whether to object or request exclusion of the Settlement. (*Id.*)
Therefore, the lack of any objections, to date, further supports the granting of Final
Approval of the Settlement. (*Id.* at ¶¶ 20-22.)

## III.   FINAL SETTLEMENT APPROVAL SHOULD BE GRANTED

### A. Legal Standards for Settlement Approval

A district court determines whether to approve a class action settlement through a
two-step process. First, a court will conduct a "preliminary, pre-notification hearing to
determine whether the proposed settlement is within the range of possible approval." In re
*AT&T Mobility Wireless Data Servs.*, Sales Litig., 270 F.R.D. 330, 346 (Ill. 2010). On
September 26, 2019, this Court granted preliminary approval. Next, this Court may
approve the class action settlement after hearing and upon a finding that the settlement is
"fair, reasonable, and adequate." Fed. R. Civ. Proc. 23(e)(1)(C); *Hanlon v. Chrysler Corp.*,
150 F.3d 1011, 1026 (9th Cir. 1998); *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir.
2003). Therefore, the question is "not whether the final product could be prettier, smarter,
or snazzier, but whether it is fair, adequate, and free from collusion." *Hanlon*, at 1027. It
is "the settlement taken as a whole, rather than the individual component parts, that must
be examined for overall fairness." *Id*. at 1026.

To make this determination, the court must consider a number of factors, including:
(1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of
further litigation; (3) the risk of maintaining a class action status throughout the trial; (4)
the amount offered in settlement; (5) the extent of discovery completed, and the stage of
the proceedings; (6) the experience and views of counsel; (7) the presence of a
governmental participant; and (8) the reaction of the class members to the proposed
settlement. *Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 204). This
list is not exhaustive, and the importance of its factors will vary depending on the
circumstances of each case. *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir.
1993). A settlement merits final approval, when "the interests of the class as a whole are
better served by the settlement than by further litigation." *Manual for Complex Litigation*

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

(Fourth) ("MCL 4th") § 21.61, at 480 (4th ed. 2010).

The Court is not bound to exercise the same oversight of a settlement of a collective action as it must exercise with a class action under Federal Rule of Civil Procedure 23(e). Whereas the Court's role in supervising the settlement of a class action "protects unnamed class members 'from unjust or unfair settlements affecting their rights,'" *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997), members of an FLSA collective action have opted-in affirmatively. A court's involvement in the management of their action "has less to do with the due process rights" of those to be bound by a settlement, "and more to do with the named plaintiffs' interest in vigorously pursuing the litigation and the district court's interest in 'managing collective actions in an orderly fashion.'" *McElmurry v. U.S. Bank. Nat. Ass'n*, 495 F.3d 1136, 1139 (9th Cir. 2007).

A court may not approve an FLSA settlement without determining whether it is "a fair and reasonable resolution of a bona fide dispute." *Lewis v. Vision Value, LLC*, No. 1:11-cv-01055-LJO-BAM, 2012 WL 2930867, at *2 (E.D. Cal. July 18, 2012) (quoting *Yue Zhou v. Wang's Rest.*, No. C 05-0279, 2007 WL 2298046, at *1 (N.D. Cal. Aug. 8, 2007)); *see also Khait v. Whirlpool Corp.*, No. 06-6381 (ALC), 2010 WL 2025106, at *7 (E.D.N.Y. Jan. 20, 2010). As detailed below, all of the above factors support final approval of this class and collective action settlement in this case.

### B. The *Hanlon* Factors Weigh in Favor of Granting Final Approval

The proposed Settlement is both fair and reasonable considering Defendant's available legal and factual defenses to Plaintiffs' class claims. Class counsel has substantial and successful experience litigating wage and hour class actions, and absent this Settlement, Plaintiffs and the class members face significant risks in this litigation.

#### 1. The Risk, Expense, Complexity, and Likely Duration of further litigation

The risk that further litigation might result in no recovery for Plaintiffs is an important factor to consider. Issues concerning liability and damages remain uncertain. Moreover, this litigation involves complex and unsettled issues pertaining to the liability and the amount of damages resulting from Defendant's overtime payment practices and

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

the litigation of an unusual exception to the payment of overtime under the Fair Labor Standards Act (FLSA) to individuals that provide overnight assistance to disable individuals.

For example, even if class certification was granted on Plaintiffs' allegations for overtime and minimum wages for time worked off-the-clock, these claims present significant challenges because Defendant's time records do not show which of the class members were interrupted during their overnight shifts. Moreover, the off-the-clock work claims further present challenges because Plaintiffs would need to demonstrate that Defendant had actual knowledge or should have known that class members were performing off-the-clock work during their sleep times. This case also presented novel and complex issues as well as numerous risks in further litigation. For example, the issue of whether class members were properly considered "live-in" domestic service employees, and whether they were completely compensated for the hours worked during their overnight shifts presents significant risks in the litigation. Defendant vigorously denies any wrongdoing and maintains class members were properly excluded from receiving overtime wages for their sleep-time because Defendant properly considered them "live-in" domestic service employees. Cordero MFA Decl. ¶ 33.

Thus, Plaintiffs faced numerous risks in continued litigation including: (1) the risk that the proposed class would not be certified; (2) the risk that class members would be found to have been paid all wages due; (3) the risk that Defendant would be found not to have willfully failed to pay all wages due upon termination of employment; (4) the risk that Defendant would be found not to have intentionally failed to furnish accurate itemized wage statements; (5) the risk that Plaintiffs' damages calculations would be substantially undercut at trial; and (6) the risk that Defendant may appeal a ruling in Plaintiffs' favor.

Furthermore, the risk of maintaining class certification throughout trial also weighs in favor of granting final approval. These risks, in turn, enhance Plaintiffs' showing that the settlement terms are fair, reasonable, and adequate in light of the potential outcome of continued litigation.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT

Absent the Settlement, Plaintiffs would have to engage in a significant amount of investigation, formal discovery, and class-wide data analysis, as the parties are far from completing formal written discovery. For example, the parties have not formally completed and exchanged all experts' reports in the litigation; have not taken expert depositions, and Plaintiffs have yet to conclude their individual, class, and FLSA collective damages' analysis. Moreover, there is always the possibility of Defendant filing motions for class decertification. Significantly, the parties would have to prepare for separate lengthy class and PAGA trials.

Given these risks, the complexity, and novelty of these overtime and off-the-clock claims, the actual recovery through settlement confers substantial benefits on the settlement class that outweigh the potential recovery through full adjudication. (Cordero MFA Decl. ¶ 33.)

### 2. The Amount Offered in Settlement

The Gross Settlement Amount of $580,000.00, includes all payments to the class members, service awards to the class representatives, class counsel's attorney's fees and costs, settlement administration costs, and payment to the LWDA, but does not include the employer's share of payroll taxes. The net settlement fund available for distribution to class members is estimated in $285,916.67. O'Connor Decl. ¶ 10. The net settlement fund will be distributed among the class and FLSA collective members based on their dates of employment and the workweeks worked as Instructional Assistants during the relevant class and FLSA collective periods, and whether or not they are current or former employees. O'Connor Decl. ¶¶ 11-14.

The settlement administrator now confirms that the participation rate for the class is 100%. O'Connor Decl. ¶ 6-8. Class members are estimated to receive approximately $2.59[2] per workweek. The participation amount for class members who are also FLSA collective members is 89 out of 260 and the FLSA dollars claimed to date is 37,888.06. O'Connor ///

---

[2] Class counsel had previously estimated $2.62 per workweek. [Dkt. 54-2, at ¶ 120.]

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

Decl. ¶ 13. Nonetheless, these percentages may increase in the future as all FLSA collective members will be mailed a FLSA collective settlement check and they will have 180 days from the mailing of the FLSA settlement check to cash it. The settlement administrator estimates that each FLSA workweek is valued at $3.79. However, this amount may significantly increase if not all FLSA collective members decide to cash their checks because any uncashed FLSA collective settlement checks shall be redistributed pro rata among all other FLSA collective members that previously cashed their checks within the cashing deadline.

As such, the amount offered in settlement in this case is exceptional and weighs in favor of final approval.

### 3.  The Extent of Discovery Completed and the State of the Proceedings

In the context of class action settlements, as long as the parties have sufficient information to make an informed decision about settlement, "formal discovery is not a necessary ticket to the bargaining table." *Williams v. Costco Wholesale Corp.*, No. 02cv2003 IEG (AJB), 2010 WL 2721452, at *4 (S.D. Cal. July 7, 2010) (citing *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998). As discussed in detail in Plaintiffs' Motion for Preliminary Approval ("MPA"), during the nearly 4 years that this case has been pending, Plaintiffs' counsel conducted a thorough investigation and discovery into the merits and legal basis of Plaintiffs' and class members' claims and performed significant legal research with respect to the applicable law and potential defenses raised by Defendant. [Dkt. 54-2 ¶¶48-58; Dkt. 69-2 ¶44-47.] Here, over the course of nearly four years, class counsel has spent and will spend over 1,707.5 hours (1,086.40 attorney hours) litigating this case and bringing the settlement to fruition. [Dkt. 69-2 ¶¶44-47.]

The extensive information exchanged formally and informally, and the investigation undertaken allowed class counsel to assess the strengths and weaknesses of the claims and the benefits of the Settlement under the circumstances of this case. Accordingly, this weighs in favor of granting final approval.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

### 4.  The Experience and Views of Class Counsel

Class counsel has significant experience in employment litigation, having litigated similar class actions against other employers, including numerous wage and hour cases. [Dkt. 69-2 ¶ 34-37.] "The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Nunez v. BAE Sys. San Diego Ship Repair Inc.*, 292 F. Supp. 3d 1018, 1039 (S.D. Cal. 2017). Class counsel considers the settlement to be fair, reasonable, and adequate, based on their experience, and after considering the information obtained through the investigation and litigation of the claims, and after considering the risks and costs of further litigation. (Cordero MFA Decl., ¶¶ 24-32.) Accordingly, class counsel's belief that the present Settlement is both fair and adequate weighs in favor of granting final approval.

### 5.  The Reaction of the Class Members to the Proposed Settlement

The Court may look to the reaction of the class members to help determine if the settlement is fair, adequate, and reasonable. In this case, the response has been very positive. After dissemination of the class notice to the 470 class members, the overall participation rate is 100%, with zero requests for exclusion and no objections. (Cordero MFA Decl., ¶22; O'Connor Decl. ¶¶ 6-8. The absence of any objector strongly supports the fairness, reasonableness, and adequacy of the settlement. *Williams*, 2010 WL 2721452, at *3 (S.D. Cal. July 7, 2010).

### 6.  Arm's Length Negotiations

The parties engaged in substantial arm's length, informed negotiations to reach the Settlement. [Dkt.54-2.] The Settlement was reached after a full-day mediation with well-respected mediator Daniel Turner. Cordero MPA Decl., ¶ 33.

Prior to mediation, the parties conducted significant investigation, conducted in-depth fact-finding interviews with class members, and exchanged thousands of pages of documents, including relevant policies during the class period, time and payroll records, and commission agreements. Cordero MPA Decl., ¶ 48-62. Therefore, the settlement negotiations were undertaken only after the parties had plenty of information related to the

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

strengths and weaknesses of their claims.

At all times the parties' negotiations were hard-fought and conducted at arm's length between attorneys with substantial wage and hour class action experience and the Settlement is evidence of the parties' substantial efforts to reach a mutually agreeable compromise. Cordero MPA Decl., ¶ 62.

### 7. Intra-Class Equity

As Plaintiffs discussed in detail in Plaintiff's MPA, the Settlement treats class and FLSA collective members equitably. The calculation of payments for the class and FLSA collective is based on each members' workweeks worked. The payment amounts to members of the waiting time penalties subclass were calculated on a per capita basis, because waiting time penalties under California Labor Code § 203 are capped at a maximum penalty of 30 days of wages. Cal. Labor Code § 203. Thus, a per capita distribution provides for the most equitable method of calculating individual payments to members of the waiting time penalties subclass.

### C. The Proposed *Cy Pres* Beneficiary is Reasonable

In *Dennis v. Kellogg Co*., the Ninth Circuit reiterated the principles governing selection and review of *cy pres* beneficiaries in class action settlements, and provided extensive guidance concerning the application of those principles. The parties designated the Legal Aid at Work, a nonprofit organization that will benefit the class or similarly situated persons. Cordero MFA Decl. ¶ 54. The Legal Aid at Work offers different programs throughout California—including Northern California where most of the class members worked—that help individuals to understand and assert their workplace rights and further provides free legal services to low-income workers and marginalized communities. Cordero MFA Decl. ¶ 55. This easily satisfies the requirement that there be a "driving nexus between the plaintiff class and the cy pres beneficiaries." as required by *Dennis*. See *Dennis*, 697 F.3d at 865. The Court should therefore approve the Parties' *cy pres* designation.

///

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

**D. The Court Should Approve the Payment of PAGA Penalties to the LWDA**

The Court also should award the requested $20,000.00 as the PAGA payment. The parties agree to a $20,000.00 payment from the gross settlement amount in exchange for the PAGA Release. 75% of the PAGA payment will be allocated to the LWDA and the remaining 25% fees to PAGA employees. [Settlement Agreement at § 4.7.]

Federal courts repeatedly have approved similar LWDA payments, and this Court should follow suit. *Calhoun, et al. v. Celadon Trucking Services, Inc*., No. 5:16-cv-01351-PSG-FFM, 2017 WL 11631978, at *9 (C.D. Cal. Nov. 13, 2017) (approving $14,500.00 payment to LWDA from a $950,000.00 settlement); *Garcia v. Gordon Trucking, Inc*., No. 1:10-CV-0324 AWI, SKO, 2012 WL 5364575, at *7 (E.D. Cal. Oct. 31, 2012) (approving $10,000.00 payment to the LWDA from a $3.9 million settlement); *Chu v. Wells Fargo Invs. LLC*, Nos. C 05-4526 MHP, C 06-7924 MHP, 2011 WL 672645, at *1 (N.D. Cal. Feb. 16, 2011) (approving $7,500.00 payment to LWDA from a $6.9 million common fund settlement); see also *Nordstrom Comm'n Cases*, 186 Cal. App. 4th 576, 589 (2010) (holding trial court properly approved settlement that allocated nothing to PAGA claims).

This $20,000 PAGA Payment amount was not the result of self-interest at the expense of other Class Members. Where settlements "negotiate a good faith amount" for PAGA penalties and "there is no indication that this amount was the result of self-interest at the expense of other Class Members," such amounts are generally considered reasonable. *Hopson v. Hanesbrands Inc.,* No. CV-08-0844 EDL, 2009 WL 928133, at *9 (N.D. Cal. Apr. 3, 2009). Moreover,

the amount, $20,000.00 is well within the range of reasonable PAGA settlement amounts approved by

the courts. See, e.g., Id. at *1 (approving a PAGA settlement of 0.3% or $1,500).

**E. The Court Should Approve the Settlement Administrator's Fees and Costs**

Pursuant to the Settlement Agreement and the Court's Preliminary Approval Order, the parties hired CPT Group, Inc. as the Settlement Administrator. [Dkt. 62]. CPT's costs in connection with the administration of this Settlement are $15,570.00. O'Connor Decl.

13                                                    4:23-cv-02678-DMR

¶ 15. All amounts were necessarily incurred in sending the notice to the settlement class members, preparing materials, answering questions from settlement class members, performing settlement calculations, processing class member opt-in forms, and executing other settlement administration tasks. The requested fees and costs are reasonable given the complexity of the settlement calculations in this case and the size of the settlement class. Cordero MFA Decl. ¶ 51.

**F.  The Court Should Finally Approve the Service Awards to the Named Plaintiffs**

Courts routinely approve service awards to compensate named plaintiffs for the services they provide and the risks they incurred as a result of the class action litigation. *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (quoting In re *S. Ohio Corr. Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997)); see also *Bell v. Farmers Ins. Exch.*, 115 Cal. App. 4th 715, 726 (2004) (upholding "service payments" to named plaintiffs for their efforts in bringing class case); *Pelletz v. Weyerhaeuser Co.*, 592 F. Supp. 2d 1322, 1329 (W.D. Wash. 2009) (noting that such awards "may be merited for time spent meeting with class members, monitoring cases, or responding to discovery") (quoting MCL 4th § 21:62 n.971 (noting that service awards are warranted).

Courts frequently approve service awards of $5,000.00 or more. *See e.g. Evans v. Linden Research, Inc.*, No. C-11-01078 DMR, 2013 WL 5781284, at *5 (N.D. Cal. Oct. 25, 2013) (noting that incentive awards of $5,000.00 are presumptively fair in the district). Several district courts in the Ninth Circuit have applied the five-factor test set forth in *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995), in assessing the reasonableness of an incentive award, which analyzes (1) the risk to the class representative in commencing a class action, both financially and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit, or lack thereof, enjoyed by the class representative as a result of the litigation. *See e.g. Carter v. Anderson Merchs.*, LP, Nos. EDCV 08-0025-VAP (OPx), EDCV 09- 0216-VAP (OPx), 2010 WL 1946757, at *3-4 (C.D. Cal. May 11, 2010); *Van Vranken*, 901 F. Supp

GRAHAMHOLLIS APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

at 299.

All of the above factors support the service awards that Plaintiffs seek in this case. In support of their service award request, named Plaintiffs submitted detailed declarations specifying their time, efforts, involvement in prosecuting these class claims, as well as the risks they incurred in doing so. [Dkt. 54-3, Declaration of Genevieve Basham in Support of Plaintiffs' Motion for Preliminary Approval ("Basham Decl."); Dkt. 54-4, Declaration of George Pepper in Support of Plaintiffs' Motion for Preliminary Approval, ("Pepper Decl."), and Dkt. 54-5, the Declaration of Jennifer Raper in Support of Plaintiffs' Motion for Preliminary Approval, ("Raper Decl.")]

As attested in their declarations, Plaintiffs: (1) assisted class counsel in the investigation, in identifying witnesses, and in locating evidence to support Plaintiffs' and class members' claims; (2) Plaintiffs were crucial participants in the prosecution of this litigation, as they actively participated in the case development, investigation, and settlement negotiations in this case. Cordero MFA Decl. ¶¶ 34-47. Plaintiffs assisted counsel with the investigation of the claims, preparation of the Complaints, provided hundreds of pages of relevant documents, including documents related to Defendant's overtime and payment policies, and actively worked with class counsel in the case. *Id.*

Plaintiffs communicated regularly with Ms. Cordero and Ms. Gee. They spent significant hours discussing with class counsel the facts related to their employment with Defendant, including discussing their job duties and responsibilities and company policies relating to the payment of wages. [Dkt. 54-3, Basham Decl. ¶¶ 11-29; Dkt. 54-4, Pepper Decl., ¶¶ 12-25; Dkt. 54-5, Raper Decl. ¶¶ 10-24.]

Plaintiffs spent a significant amount of time assisting class counsel in litigating this case. Specifically, Plaintiffs Basham, Pepper, and Raper spent a total of approximately 162 hours, 80 hours, and 80 hours respectively in connection with prosecution and settlement of the class action claims. [Dkt. 54-3 ¶29; Dkt. 54-4 ¶25; Dkt. 54-5 ¶24.] Class counsel believes other class members would have not taken any action individually. Therefore, no compensation would have been recovered for them at all, but for Plaintiffs' actions on their

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

1 | behalf.

2 |      Plaintiffs also incurred significant personal risk by suing Defendants. Cordero MFA
3 | Decl. ¶ 35, 46.

4 |      Different from other class members, class representatives, in agreeing to bring this
5 | action, accepted the risks and responsibilities of representing the interests of all class
6 | members, including the risk of having to pay litigation costs to Defendant if they were not
7 | successful in the litigation. Cordero MFA Decl. ¶ 46. Thus, Plaintiffs incurred the risk of
8 | losing and being subject to court-ordered defense costs.

9 |      Class representatives Basham, Pepper, and Raper seek a service award in the
10 | amount of $10,000.00 for each one of them. The requested service awards are reasonable
11 | considering the time and effort Plaintiffs have spent in the litigation. Cordero MFA Decl.
12 | ¶ 34-47. The aggregate amount of $30,000.00 for service awards to the three class
13 | representatives represents a minimal percentage of the net settlement proceeds
14 | (estimated by the Settlement Administrator in $285,916.67 available to be claimed by
15 | the class members.)

16 |      The service awards to the named Plaintiffs and class representatives is well within
17 | the acceptable range awarded in similar cases where the class representative "has been
18 | instrumental in bringing the lawsuit forward" and "has performed numerous tasks in
19 | association with the litigation." *Van Vranken*, 901 F. Supp. at 300 (approving an award
20 | of $50,000.00 for the named plaintiff.) The proposed service award to each one of the
21 | Plaintiffs is therefore appropriate and justified as part of the overall settlement and
22 | warrants final approval.

23 | **G. Plaintiffs' Request for Attorney's Fees and Reimbursement of Litigation Costs**
24 |     **is Reasonable**

25 |      The Settlement further provides that class counsel would recover an award of
26 | $193,333.34 as attorney's fees and the reasonably incurred litigation costs. As discussed in
27 | Plaintiffs' Unopposed Motion for An Award of Attorneys' Fees and Costs, [Dkt. 69], the
28 | attorneys' fees are not the result of collusion. Plaintiffs' and class counsel made ample

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

16            4:23-cv-02678-DMR

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT

showing of the reasonableness of the requested attorney's fees and costs in Plaintiffs' fee motion (currently set to be heard concurrently with the present motion). Plaintiffs hereby incorporate by reference Plaintiffs' Motion for Award of Attorney's Fees and Costs and the Declaration of Vilmarie Cordero filed on August 19, 2025. [Dkt. 69.]

## IV.    CONCLUSION

The Court should grant final approval of the Settlement Agreement and order the parties and the Settlement Administrator to carry out its provisions for payments, related documentation, reporting, and additional actions, as specified in the Settlement Agreement. A proposed Judgment and Final Order incorporating those provisions is submitted with this Motion.

Respectfully submitted,

Dated: September 11, 2025                    GRAHAM**HOLLIS** APC

By:  /s/ Vilmarie Cordero
VILMARIE CORDERO
Attorney for Plaintiffs GENEVIEVE
BASHAM, JENNIFER RAPER, and
GEORGE PEPPER